NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0392n.06

No. 07-1817

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Jun 01, 2009**
LEONARD GREEN, Clerk

MARGARET SOKOLNICKI,                )
                                    )
    Plaintiff-Appellant,           )
                                    )
v.                                  )    ON APPEAL FROM THE UNITED
                                    )    STATES DISTRICT COURT FOR THE
CINGULAR WIRELESS, LLC,             )    EASTERN DISTRICT OF MICHIGAN
                                    )
    Defendant-Appellee.            )
                                    )
                                    )
                                    )

Before: MARTIN, SUHRHEINRICH, and GIBBONS, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.** Plaintiff-appellant Margaret Sokolnicki appeals from the district court's grant of summary judgment in favor of defendant-appellee Cingular Wireless, LLC ("Cingular"). Sokolnicki worked for Cingular as a retail sales consultant from 1997 until 2005. In April of 2005, following a series of documented incidents in which Sokonicki violated company policy, Cingular terminated Sokolnicki. Sokolnicki then brought this suit in the United States District Court for the Eastern District of Michigan, alleging age discrimination, sex discrimination, and intentional infliction of emotional distress. The district court granted summary judgment in favor of Cingular and dismissed all claims with prejudice. We affirm the judgment of the district court, although we employ a different analysis.

I.

Sokolnicki joined Ameritech, Cingular's predecessor company, as a retail sales consultant in the Clarkston, Michigan, store in September of 1997. Sokolnicki, a white female, was then about 48 years old. In her first performance appraisal, Sokolnicki received praise for "deliver[ing] good customer service." However, store manager Robert Martin noted that Sokolnicki was only "average in sales" because she "needs to speed up sales when stores [*sic*] busy." Although Martin noted issues with Sokolnicki's speed several times, he gave her an overall performance rating of "Successful."[1] In the first quarter of 1998, Martin praised Sokolnicki as "very customer focused" but again noted that she "Needs to continue to speed up sales even though she has improved." By the end of 1998, Sokolnicki had become "one of the top sales associates," achieving 123% of her quota for the year in activations. Nonetheless, Martin again rated Sokolnicki "Successful" and wrote that "During busy times needs to find ways to increase the speed of transaction." In 1999, despite being selected as employee of the month in September, Sokolnicki finished the year at 94% of her quota. Martin again rated Sokolnicki "Successful" and stated that "Speed of transactions has increased but needs to continue to work in this area."

In 2001, Sokolnicki's evaluation was overwhelmingly positive. Bethann Levy, who had replaced Martin as manager of the Clarkston store, noted that Sokolnicki averaged 137% of her quota

---

[1]The rating scale was as follows: 1-Outstanding, 2-Excellent, 3-Successful, 4-Marginal, 5-Unsatisfactory, and 6-Newly Hired.

for the year and was sales leader of the month for July and October. Levy rated Sokolnicki 4.7 out of 5.[2]

However, in October of 2003, Levy issued Sokolnicki a "Counseling Notice" for failure to achieve her quota. Sokolnicki was required to achieve at least 71% of her quota for adjusted gross sales but achieved only 64.7%. The written notice, which memorialized a discussion between Levy and Sokolnicki, indicated that "Failure to improve to acceptable levels at any time during [a six month period], or if any further incidents occur, could result in further discipline, up to and including dismissal."

Robyn Kelsey replaced Levy as store manager in November of 2003. Although Sokolnicki never had problems with Martin or Levy, Sokolnicki alleges that Kelsey discriminated against her because of her age. According to Sokolnicki, Kelsey "thought [she] was too old to do the work." As direct evidence of this, Sokolnicki points to a single comment that Kelsey made when coaching Sokolnicki to speed up her customer transactions. Sokolnicki alleges that Kelsey told her "to quicken [her] sales like the younger workers" and then immediately corrected herself and said "other workers . . . like she did not mean to say younger." Although that was the only time Kelsey used the

_____

[2]The rating scale was as follows:

0-Not rated, employee has less than 3 months of service
1-Does not meet basic performance objectives/behavioral expectations
2-Meets some but not all performance objectives/behavioral expectations
3-Meets and sometimes exceeds performance objectives/behavioral expectations
4-Frequently exceeds performance objectives/behavioral expectations
5-Consistently exceeds performance objectives/behavioral expectations.

word "younger," Kelsey frequently told Sokolnicki that she was too "slow." Sokolnicki believes that Kelsey "thought [Sokolnicki] was slow because of [her] age."

Another point of contention between Sokolnicki and Kelsey was the title of "Lead Associate." Lead associates take on a small number of extra responsibilities when no manager is present at the store. Under Martin and Levy, Sokolnicki had held the title of lead along with two others. When Kelsey became manager, however, she had all of the leads re-interview for the position. According to Sokolnicki, Kelsey then re-selected the other two leads but replaced Sokolnicki with another, younger employee, Stephanie Frederickson. According to Kelsey, however, there were four existing leads, only two of whom were re-selected. The other existing lead who was not re-selected was Jamie Szwec, who appears to be younger than Sokolnicki.

Kelsey's first review of Sokolnicki assigned her an overall review rating of 2.1 out of 5 for 2003. Sokolnicki's review indicates that her two primary problems were failure to achieve her quota and her slowness in completing customer transactions. Of particular note, Sokolnicki achieved only 78.51% of her quota in "Subs." Regarding Sokolnicki's performance in subs, Kelsey wrote: "Sub attainment is below Expectations. 78.51% in Subs is unexceptable [*sic*]."

On March 24, 2004, Kelsey gave Sokolnicki a "Verbal Warning-Following the Correct Procedures." The warning related to an incident involving customer Don McLain and was not a part of Cingular's formal discipline policy. Then on May 28, 2004, Kelsey issued a second counseling notice, again referencing the McLain transaction as well as a second transaction with customer Younia Isaac. Both incidents involved Sokolnicki's cancelling a customer's existing phone line and then activating a new line, rather than upgrading the existing line. This practice violates Cingular

policy because it could allow a sales consultant to collect fraudulent commissions. Sokolnicki did not dispute the events underlying the McLain and Isaac incidents, but she insisted that she had done nothing wrong. The 2004 counseling notice, like the 2003 counseling notice, warned that failure to improve could result in dismissal.

On October 5, 2004, Kelsey issued Sokolnicki a "Final Written Warning" for activating a line at the request of a person who was not an authorized user on the customer's account and accepting a forged contract. Sokolnicki accepted a personal check for the line from Laura St. Clair and verified St. Clair's identity by checking her driver's license. However, Sokolnicki also had St. Clair sign the service contract in the name of Cheryl Curtis, the owner of the account. Curtis was not present in the store. As a result, Sokolnicki knew or should have known that she was accepting a forged document. Sokolnicki admitted that she accepted a document with a forged signature because she "didn't look really closely at it" and made a "mistake." This violation, standing alone, could have resulted in termination. While Sokolnicki was not terminated for the St. Clair incident, the final written warning, like the two counseling notices, stated that "if any further incidents occur" Sokolnicki could be dismissed.

The incident that led to Sokolnicki's termination occurred in early April of 2005, when Sokolnicki activated an account for a customer who was not present in the store. Sokolnicki had the customer fax a copy of her driver's license to the store. The driver's license was expired, and the address on the license did not match the address in Cingular's system. In that situation, Cingular policy requires the sales consultant to check a second piece of identification. Nonetheless, Sokolnicki completed the transaction without checking a second piece of identification or obtaining

5

management approval. Again, Sokolnicki did not deny the facts, but she did not believe she had done anything wrong.

The decision to terminate Sokolnicki was made by senior human resources consultant Matthew Wallace. Wallace received a report of the incident from Kelsey, and he conducted an independent investigation of the incident. Wallace also consulted with Cingular's sales department, human resources department, ethics department, and legal department. Ultimately, Wallace recommended that Sokolnicki be terminated, and his decision was approved by all of the consulting departments. Wallace and Kelsey informed Sokolnicki of the decision on April 7, 2005; Sokolnicki was represented at the meeting by her union representative, Gregory Wynn. Following the termination meeting, Wynn filed a grievance on Sokolnicki's behalf, which Cingular denied. Wynn then requested arbitration, which was also denied.

On October 26, 2006, Sokolnicki filed this lawsuit in the United States District Court for the Eastern District of Michigan, alleging that she was wrongfully terminated based on her age, in violation of the Age Discrimination in Employment Act ("ADEA") and Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"); that she was wrongfully terminated based on her sex, also in violation of the ELCRA; and that Cingular had committed the tort of intentional infliction of emotional distress ("IIED"). Later, however, the parties stipulated to the dismissal of Sokolnicki's sex discrimination claim.

The district court granted Cingular's motion for summary judgment on the remaining claims. *Sokolnicki v. Cingular Wireless, L.L.C.*, No. 05-74110, 2007 WL 1500182, at *1 (E.D. Mich. May 22, 2007). The district court found that Sokolnicki failed to present direct evidence of age

discrimination because Kelsey's alleged "younger-other" comment was isolated and made by a person without decisionmaking authority. *Id.* at \*5. The district court further found that Sokolnicki had not made out a *prima facie* case of age discrimination based on circumstantial evidence because she failed to show that she was qualified for the position. *Id.* at \*8. Finally, the district court concluded that Sokolnicki did not allege conduct that was sufficiently extreme or outrageous to support a claim of IIED under Michigan law. *Id.* Accordingly, the district court granted summary judgment in favor of Cingular and dismissed all remaining claims with prejudice.

Sokolnicki timely appealed, arguing that the district court applied the wrong law with respect to the "qualified" element of her *prima facie* case of age discrimination based on circumstantial evidence. Sokolnicki maintains that she has made out a *prima facie* case and that remand is therefore required.

II.

We review a district court's grant of summary judgment *de novo*. *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009). Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether there is a genuine issue of material fact, we must draw all reasonable inferences in favor of Sokolnicki. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Claims brought under the ADEA and Michigan's ELCRA are subject to the same standards and analysis. *Blair v. Henry Filters, Inc.*, 505 F.3d 517, 523 (6th Cir. 2007). To make out a *prima*

*facie* case of age discrimination based on circumstantial evidence, Sokolnicki must show that "(1) [s]he was at least 40 years old at the time of the alleged discrimination; (2) [s]he was subjected to an adverse employment action; (3) [s]he was otherwise qualified for the position; and (4) [s]he was replaced by a younger worker." *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 521 (6th Cir. 2008). If Sokolnicki can establish a *prima facie* case, the burden shifts to Cingular to show "a legitimate, non-discriminatory reason for the termination." *Stockman v. Oakcrest Dental Ctr., P.C.*, 480 F.3d 791, 802 (6th Cir. 2007) (citation omitted). *See generally Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Finally, if Cingular can show such a reason, the burden shifts back to Sokolnicki to prove by a preponderance of the evidence that Cingular's proffered reason is, in fact, pretextual. *Hein v. All Am. Plywood Co.*, 232 F.3d 482, 489 (6th Cir. 2000).

At issue here is the third prong of the *prima facie* case–whether Sokolnicki was qualified for the job. Sokolnicki argues that the district court improperly considered Cingular's proffered nondiscriminatory reason at the *prima facie* stage of its analysis, in violation of *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651 (6th Cir. 2000). We held in *Cline*: "[W]hen assessing whether a plaintiff has met her employer's legitimate expectations at the prima facie stage of a termination case, a court must examine plaintiff's evidence independent of the nondiscriminatory reason 'produced' by the defense as its reason for terminating plaintiff." 206 F.3d at 660-61; *see also Cicero v. Borg-Warner Auto., Inc.*, 280 F.3d 579, 585 (6th Cir. 2002) ("A court must evaluate whether a plaintiff established [her] qualifications independent of the employer's proffered nondiscriminatory reasons for discharge." (citing *Cline*, 206 F.3d at 660-61)).

Cingular's proffered reason for terminating Sokolnicki was the April 2005 incident in which Sokolnicki failed to request a second piece of identification when company policy so required. Under *Cline*, therefore, the district court was required to determine whether Sokolnicki was qualified without reference to the April 2005 incident. Moreover, under a fair reading of *Cline*, the entire sequence of policy violations that culminated in dismissal could be considered the "proffered reason." A review of the district court opinion indicates that the court did, in fact, consider this evidence. *See Sokolnicki*, 2007 WL 1500182, at \*8. This was error.

We, however, need not determine whether Sokolnicki was qualified because, even assuming that she made out a *prima facie* case, she cannot establish pretext. *See Ladd v. Grand Trunk Western R.R., Inc.*, 552 F.3d 495, 502 (6th Cir. 2009). Cingular's nondiscriminatory reason for Sokolnicki's termination is a series of documented policy violations occurring in March 2004, May 2004, October 2004, and April 2005. The violations appear to be serious: Sokolnicki improperly handled customer transactions in a manner that would allow her to collect fraudulent commissions; she accepted a forged contract; and she failed to obtain required identification before allowing a new line to be activated. These reasons, if proven, would be legitimate and nondiscriminatory.

Because Cingular made this showing, the burden shifts back to Sokolnicki to show that the proffered reason is pretextual. *Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1105 (6th Cir. 2008). Sokolnicki may satisfy this burden "1) by showing that the reason has no basis in fact; 2) by showing that the reason did not actually motivate the employer's action; or 3) by showing that the reason was insufficient to motivate the action." *Macy v. Hopkins County Sch. Bd. of Educ.*,

484 F.3d 357, 366 (6th Cir. 2007). Sokolnicki has failed to present evidence from which a trier of fact could find that she has met this burden.

First, Sokolnicki has not disputed any of the facts underlying the policy violations. To the contrary, she admitted the underlying events, although she maintains that she did nothing wrong by taking the actions that she took. Second, she has not produced evidence that the policy violations were not the true reason for her dismissal. Although Sokolnicki alleges that Kelsey thought she was too old, or "slow," to do the work, it is unrebutted that Kelsey lacked the authority to terminate Sokolnicki and that Wallace, a senior human resources professional, made the decision to dismiss her. Sokolnicki has not offered any evidence that Wallace felt any age-based animus toward her. Finally, Sokolnicki has not presented evidence that the proffered reasons were insufficient to warrant termination. Sokolnicki admitted that she accepted a document with a forged signature and that that incident, standing alone, would have warranted dismissal. She also signed an acknowledgment that any further incident could result in dismissal. Then, six months later, Sokolnicki committed another policy violation when she failed to seek a second piece of identification. Again, Sokolnicki admitted that the address on the customer's driver's license did not match the address in Cingular's system, but stated that she did not notice the discrepancy until Kelsey brought it to her attention later. Failure to confirm the customer's identity was a violation of Cingular's policy sufficient to warrant dismissal. Consequently, Sokolnicki has not presented proof from which the finder of fact could conclude by a preponderance of the evidence that Cingular's proffered reason was pretextual. *See Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 728-29 (6th Cir. 2008) (finding no pretext where

employee was terminated for employer's reasonable belief that employee had violated company policy).

We are free to affirm the dismissal of Sokolnicki's claim on any ground supported by the record. *See, e.g.*, *Dismas Charities, Inc. v. U.S. Dep't of Justice*, 401 F.3d 666, 677 (6th Cir. 2005). Therefore, we disagree with Sokolnicki that remand is required, and we affirm on the alternative ground that Sokolnicki failed to rebut Cingular's legitimate reason for her termination.

III.

Because we find that Sokolnicki failed to offer evidence from which the trier of fact could conclude by a preponderance of the evidence that Cingular's proffered reason for her termination was pretextual, we affirm the judgment of the district court.