IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
December 13, 2010 Session

## KELLY WILLIAMS, et al., v. THE GREATER CHATTANOOGA PUBLIC TELEVISION CORPORATION, d/b/a WTCI-TV CHANNEL 45

Appeal from the Chancery Court for Hamilton County
No. 07-0545     Hon. W. Frank Brown, III., Chancellor

No. E2010-00771-COA-R3-CV - Filed March 25, 2011

The Trial Court granted summary judgment to the defendant on plaintiffs' causes of action, alleging discrimination by their employer and termination by the employer because of their age, or that they suffered a retaliatory discharge. Upon review of the record, we conclude there is disputed material evidence as to the claims of each plaintiff, and reverse the summary judgment and remand to the Trial Court.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Reversed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., J., and D. MICHAEL SWINEY, J., joined.

Harry F. Burnette and Donna J. Mikel, Chattanooga, Tennessee, for the appellants, Kelly Williams, Robert Williams, Earlynn Schubert, and Barbara Dadswell.

N. Mark Kinsman and J. Chad Hogue, Chattanooga, Tennessee, for the appellee, The Greater Chattanooga Public Television Corporation, d/b/a WTCI-TV Channel 45.

## OPINION

This is an appeal from summary judgments granted to the defendant/appellee Greater Chattanooga Public Television Corporation, d/b/a WTCI-TV Channel 45 (WTCI). The suit

was filed by plaintiffs/appellants Kelly Williams, Robert Williams and Earlynn Schubert against their former employer, WTCI, on June 22, 2007. Plaintiffs alleged that they were discriminated against and terminated by WTCI because of their age, and sought benefits and damages for that discrimination, pursuant to Tenn Code Ann. § 4-21-101 *et seq.*, the Tennessee Human Rights Act (THRA).

On October 11, 2007, plaintiff Cynthia Lowry filed suit in the same Court, alleging that her former employer, WTCI, had likewise violated the THRA when it discriminated against her and terminated her employment because of her age. Several months later, on February 5, 2008, plaintiff Barbara Dadswell brought an action against WTCI in the same Court alleging that she also was discriminated against and terminated because of her age in violation of the THRA. Ms. Dadswell also stated an alternative cause of action that she was constructively terminated in retaliation for her refusal to participate in an illegal activity in violation of Tennessee common law and Tenn. Code Ann. § 50-1-304.[1] The cases were consolidated for trial and for all other purposes on December 29, 2008.

On July 1, 2008, WTCI filed a motion for summary judgment against Kelly Williams, Robert Williams and Earlynn Schubert asserting that there was no direct evidence that plaintiffs were discharged because of discriminatory intent, plaintiffs cannot prove their *prima facie* case of age discrimination under the *McDonnel Douglas* burden-shifting analysis, and plaintiffs cannot recover for their claims of emotional distress under Tenn. Code Ann. § 4-21-101 *et seq.* Supporting this motion, defendant attached an affidavit of Paul Grove, the president of the television station and the response to interrogatories of Kelly Williams. While this motion was pending, WTCI filed a motion for partial summary judgment against Ms. Dadswell on February 9, 2009, and stated that there were no issues of material fact in the matter and that it was entitled to judgment as a matter of law based on the following: (a) Dadswell was not fired or constructively discharged; (b) plaintiff cannot prove her *prima facie* case of age discrimination under the *McDonnel Douglas* burden-shifting analysis; and (c) plaintiff cannot recover for her claims of emotional distress under Tenn. Code Ann. § 4-21-101 *et seq.* In support of the motion, WTCI attached an affidavit of Paul Grove, excerpts from the discovery responses of Ms. Dadswell, excerpts from the discovery responses of defendant and excerpts from the deposition of Paul Grove.

Plaintiffs Kelly Williams, Robert Williams, Earlynn Schubert and Barbara Dadswell

---

[1] Tenn. Code Ann. § 50-1-304 provides that "[n]o employee shall be discharged or terminated solely for refusing to participate in, or for refusing to remain silent about, illegal activities.

filed a response to defendant's motion of summary judgment on October 2, 2009.[2] Plaintiffs' response was supported by the affidavits of Schubert, Williams, Williams, and Dadswell, the transcript of the deposition of Maureen Wagner and excepts from the transcripts of the depositions of Paul Grove and Peter DeLynn. They also attached as exhibits to their response the written discovery responses of defendant,

The Trial Court issued a Memorandum Opinion on March 10, 2010 and an Order dismissing all claims of Williams, Williams, Schubert and Dadswell. The Court held that Kelly Williams, Robert Williams and Earlynn Schubert had made a *prima facie* case of age discrimination based on indirect evidence. The Court set out the four elements of a *prima facie* case for age discrimination:

> (1) that he or she is a member of a protected class of persons forty years of age or older, (2) that his or her work performance satisfied the employer's reasonable expectations, (3) that he or she was actually or constructively terminated, and (4) that the termination occurred under circumstances giving rise to an inference of discrimination based on age.

*Wilson v. Rubin*, 104 S.W.3d 39, 52 (Tenn. Ct. App. 2002)(citing *Collins v. New York City Transit Auth.,* 305 F.3d 113, 118 (2d Cir.2002)).

As to Kelly Williams, the Court concluded that she had met all the elements to make a *prima facie* case of age discrimination as she was a member of the protected class, was qualified for her job, was terminated and the termination had occurred under circumstances where she was treated differently than younger employees, giving rise to the inference that the termination was based on discrimination based on her age. Likewise, Robert Williams had shown that he was over forty, qualified for his job, was terminated and he had been replaced by a person who was substantially younger. Ms. Schubert had also satisfied the elements to make a *prima facie* case as she was a member of the over age forty protected class, was objectively qualified for her job, choose retirement only when she was told she was going to be terminated and was replaced by someone who was substantially younger. However, the Trial Court held that summary judgment in favor of the defendant WTCI was appropriate because these three plaintiffs could not show that the reasons for termination proffered by defendant were a pretext under the McDonnell Douglas burden shifting

---

[2] Although Ms. Dadswell's claim for retaliatory discharge was not included in the motion for summary judgment brought against her, defendant asked for summary judgment in its memorandum in support of the motion for summary judgment and the trial court granted summary judgment as to both of Ms. Dadswell's claims.

framework.[3]

As to Dadswell's claims, the Trial Court found that Dadswell did not present a *prima facie* case that her constructive discharge was because of age discrimination, as she did not show that her constructive discharge had occurred under circumstances that would give rise to an inference of discrimination based on age. Her common law and statutory claim for retaliatory discharge were also dismissed. The Court set forth the elements of a *prima facie* retaliatory discharge claim:

(1) that an employment-at-will relationship existed; (2) that the employee was discharged, (3) that the reason for the discharge was that the employee attempted to exercise a statutory or constitutional right, or for any other reason which violates a clear public policy evidenced by an unambiguous constitutional, statutory, or regulatory provision; and (4) that a substantial factor in the employer's decision to discharge the employee was the employee's exercise of protected rights or compliance with clear public policy.

*Crews v. Buckman Laboratories Int'l, Inc.*, 78 S.W.3d 852, 862 (Tenn. 2002).

The statutory basis for a retaliatory discharge claim is found at Tenn. Code Ann. § 50-1-304 (2008). The trial court stated that the elements to establish a *prima facie* case under that statute are:

the plaintiff must show (1) his status as an employee; (2) his refusal to participate in, or remain silent about, illegal activities; (3) the employer's discharge of the employee; and (4) an exclusive causal relationship between his refusal to participate in or remain silent about illegal activities and his termination by the employer.

*Freeman v. Lewisburg Hous. Auth.*, M2006-01898-COA-R3-CV, 2008 WL 360607 at * 3 (Tenn. Ct. App. Feb. 8, 2008).

The Trial Court noted that Ms. Dadswell's employment status was "at will" and that a reasonable jury could have concluded that she was subject to a hostile work environment that caused her to be constructively discharged. Further, a jury could reasonably conclude that a significant amount of the hostility in the work environment was related to her refusal to follow her employer's directive to make a copy of the Nielsen Report. However, the Trial Court concluded that her refusal to make a copy of the Nielsen Report did not satisfy the necessary element of a showing that her termination was for a reason which violates clear public policy or her refusal to participate in illegal activities. For these reasons, the Trial

---

[3] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).

Court concluded that Ms. Dadswell had failed to make a *prima facie* case of retaliatory discharge and that summary judgment was appropriate.

Because the Trial Court's ruling was final as to Kelly Williams, Robert Williams, Earlynn Schubert and Barbara Dadswell, but not to the claims of Cynthia Lowery, the parties agreed that it would be in their interest to designate the ruling of summary judgment a Final Judgment, and plaintiffs, Williams, Williams, Schubert and Dadswell appealed to this Court.

We agree with the Trial Court's finding that plaintiffs made out a *prima facie* case of age discrimination.

Paul Grove's affidavit was filed with the Motion for Summary Judgment, and he maintained that the decisions made during the "reorganization" of WTCI were made by him without any consideration as to the age of the employees. He stated that the reorganization was necessary due to overlapping job responsibilities, various inefficiencies, and the unprofitable practices of the organization. Grove's affidavit sets forth facts regarding the termination of plaintiffs based on his personal knowledge. In April, 2006, Mr. Grove was hired by the Board of Directors of WTCI to serve as the station's President and CEO. WTCI is part of the PBS network and relies upon donations, memberships and grants for its operating expenses. At the time of Grove's hiring, the station had been without a President and CEO for approximately nine months. According to Mr. Grove he began his tenure with the expectation of making changes in the structure of the station to improve ratings and revenue. He spent the first three months analyzing the structure of the station as a whole, the individual departments, and the employees. He stated that he determined that a reorganization of the station was necessary to increase efficiency, eliminate unprofitable parts of the station, and to eliminate redundant positions.

One of the areas Grove investigated during the three-month period was the programming for the station. He explained that in his experience, programming decisions have a great impact on ratings. He stated that he determined that WTCI should outsource its programming decisions to an experienced outside organization to save costs and to improve ratings. Prior to the reorganization, Kelly Williams was the Vice President of Programming and Public Information at WTCI. Grove stated that her primary duties were to make decisions as to the optimal lineup for national PBS programs and to schedule the locally produced shows to maximize viewership. Grove stated that prior to the reorganization, Kelly Williams' salary and benefits were $69,056.00 per year. He had worked previously for The Programming Service for Public Television, Inc., which was used by approximately twenty-five PBS stations. He was aware that those stations, through their use of this programming service, had realized significant cost savings as well as improved ratings. He concluded that WTCI would benefit by outsourcing the programming function to The Programming Service

for Public Television, Inc. Accordingly, on June 23, 2006, he told Kelly Williams of his decision to outsource her position and he informed her that her services were no longer needed at the station. Mr. Grove claimed that the replacement of Kelly Williams with the service resuled in an annual saving of $24,056.00, and that her position was not filled.

As another part of Grove's initial three month assessment of the station, he reviewed the production staff to determine if there was need for change in that area. Prior to the reorganization initiated by Grove, Robert Williams held the position of Director of Production and Video and Contract Services. In that position, he was expected to contact individuals and entities and to sell WTCI's production services on a commission basis. Grove stated that it was his understanding that Robert Williams' primary responsibility was to bring in clients to purchase the stations' production services. He explained that upon reviewing the revenue statement for Mr. Williams' department he found that the department was not profitable. During the fiscal year ending on June 30, 2006, the expenses for this department were $75,192.00 but the revenues were only $68,758.00, making the net loss $6,614.00. Grove stated as to the status of Robert Williams specifically when he stated that Mr. Williams was "upside down on his numbers". In other words his production sales did not cover his own salary. Based on this information, Grove decided to do away with the commission based position in the production department held by Williams. He explained that he was of the opinion that the organization needed a production chief who would be responsible for all production projects and not a sole position for soliciting clients. Grove notified him on June 23, 2006 that there was no longer a position for him at WTCI.

Grove stated that "[s]ince that time, WTCI has not maintained a commission based position such as the one formerly held by Robert Williams." However, Grove did fill the position of Vice President of Production after Williams was terminated. He contacted Peter Delynn, who had worked with him at a Florida public radio station, in June 2006 regarding the vacancy in the production department at WTCI. Delynn accepted the job and began work as Vice President of Production on July 17, 2006. At the time he was hired, DeLynn's annual salary was $50,000 and he received full benefits. He was forty-seven at the time he was hired.

Next, Grove addressed the secretary to the President and CEO position held by Earlynn Schubert at the time he was hired. He stated that it became clear to him that Ms. Schubert did not have the skills necessary to serve as his secretary. He claimed that she was unable to complete necessary tasks, such as drafting letters in a timely fashion and setting up travel arrangements without errors. Grove stated that Schubert acknowledged that she was not comfortable drafting letters or taking dictation. In Grove's opinion, these are necessary skills for the position. Grove stated that he met with Ms. Schubert on June 23, 2006 to discuss her job performance, and told her that he was going to terminate her, and she

responded that she wanted to retire. Grove claimed that he agreed with this decision.

Grove's affidavit did not address the employment and termination of plaintiff Barbara Dadswell. WTCI's written responses to interrogatories propounded by Ms. Dadswell were offered in support of its motion for summary judgment. As to Ms. Dadswell's employment at WTCI, the interrogatory responses reflect that she was hired on September 7, 2006 as a Corporate Account Executive and that she held that position until she "quit" on October 16, 2007. She also assumed the duties of Special Events Coordinator on or around May 1, 2007. According to WTCI, no one employee at WTCI was in charge of events planning and coordination until Ms. Dadswell asked for and assumed those duties in May 2007. When she assumed these additional duties she asked for and received a decrease in her work schedule in lieu of an increase in pay. WTCI maintained that Ms. Dadswell threatened to quit in December 2006 but she was asked by Grove and Susan Cates to stay on.[4]

Following Ms. Dadswell leaving WTCI her job duties were assumed by four existing employees: Ann Carter, age sixty-two, assumed the account duties and some of the duties of Special Events Coordinator; Sara Maloney (late forties), Julie Taylor and Angela Burks and volunteers assumed the remaining duties of the Special Events Coordinator.

WTCI also submitted the transcript of the deposition of Maureen Wagner who was Vice President of Development in April 2007. She resigned in October 2007, when she was approximately thirty-seven years of age. She indicated that she was the most knowledgeable about the circumstances of Barbara Dadswell's employment at WTCI. Dadswell was an account executive for corporate support and was in her late fifties. Dadswell left WTCI just days after Ms. Wagner left in October 2007. Wagner stated that Mr. Grove discussed with her his dissatisfaction with Ms. Dadswell's performance. According to Ms. Wagner, Mr. Grove thought Ms. Dadswell had a bad attitude and that she was difficult and too emotional. Grove was of the opinion that Ms. Dadswell was resistant to change, but on the other hand, Grove spoke favorably about Ms. Dadswell's energy and exuberance at times.

Wagner was asked about the Nielsen Report incident involving Ms. Dadswell, and Wagner was not at the station the day of the incident. She recalled hearing that Susan Cates had asked Ms. Dadswell to make a copy of a Nielsen Report. Wagner stated in her deposition that WTCI did not subscribe to the Nielsen service, thus it was her opinion that the employees were not supposed to copy the report. The next day, Ms. Dadswell told Ms. Wagner that she was upset that she was asked to do something she was not comfortable doing. Ms. Wagner noted that Ms. Dadswell was "very, very uncomfortable" from that

_____

[4] Susan Cates was the Director of Business and Finance at WTCI. Ms. Dadswell denied this statement in her affidavit.

moment forward and that she was "pretty vocal" about being upset. Ms. Wagner denied Ms. Dadswell's statement that she (Wagner) had told Ms. Dadswell that Mr. Grove was "out to get her fired".

Mr. Grove was asked about the Nielsen Report incident in his deposition. He refused to identify the person who provided him with the copy of the Nielsen Report. He stated that he had been informed by the station's counsel in Washington that stations could share Nielsen Reports but that they were prohibited from using the borrowed reports to generate sales. He admitted that he had never talked to anyone at Nielsen regarding borrowing the reports from subscribing stations.[5]

The issues presented for review are:

A.    Did the Trial Court err when it granted defendant's motion for summary judgment as to the plaintiffs' age discrimination claims?

B.    Did the Trial Court err when it granted defendant's motion for summary judgment as to Barbara Dadswell's retaliatory discharge claim?

Summary judgment is appropriate only when the moving party demonstrates that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law. Tenn. R. Civ. P.56.03; *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993). The court reviews a summary judgment motion *de novo* as a question of law without a presumption of correctness. *Finister v. Humboldt General Hosp., Inc.*, 970 S.W. 2d 435, 437 (Tenn. 1998); *Robinson v. Omer*, 952 S.W. 2d 423, 426 (Tenn. 1997). The evidence and all reasonable inferences are viewed in the light most favorable to the nonmoving party. *Byrd*, 847 S.W. 2d at 210-211. If both the facts and conclusions to be drawn from them permit a reasonable person to reach only one conclusion, summary judgment is appropriate. *Robinson*, 952 S.W. 2d at 426.

The Tennessee Human Rights Act (THRA), Tenn. Code Ann. § 4-21-101 *et seq.*, prohibits employers from discriminating against their employees who are forty years old or older because of their age. Tenn. Code Ann. § 4-21-101(a)(3), (b). The THRA specifically prohibits age discrimination in hiring, firing, fixing compensation, or defining the terms and conditions of employment. Tenn. Code Ann. § 4-21-401(a)(1), (2), *Wilson v. Rubin*, 104 S.W.3d 39, 51 (Tenn. Ct. App. 2002). An employee seeking to recover for unlawful age discrimination bears the ultimate burden of proving that considerations of age not only played a role in but determinatively influenced the employer's decision. *Wilson* at 51 - 52

---

[5]Mr. Grove's hearsay testimony is not properly offered for the truth under Tenn. R. Civ. P. rule 56.

(citing *Hazen Paper Co. v. Biggins,* 507 U.S. 604, 610, 113 S.Ct. 1701, 1706, 123 L.Ed.2d 338, (1993); *Loeffler v. Kjellgren,* 884 S.W.2d 463, 469 (Tenn.Ct.App.1994); *Bruce v. Western Auto Supply Co.,* 669 S.W.2d 95, 97 (Tenn.Ct.App.1984)). To establish a *prima facie* case of age discrimination using the indirect method of proof, an employee who has been terminated must demonstrate (1) that he or she is a member of the protected class of persons forty years of age or older, (2) that his or her work performance satisfied the employer's reasonable expectations, (3) that he or she was actually or constructively terminated, and (4) that the termination occurred under circumstances giving rise to an inference of discrimination based on age. *Wilson* at 52 (citing *Collins v. New York City Transit Auth.,* 305 F.3d 113, 118 (2d Cir.2002)). Proof that the plaintiff was replaced by a substantially younger employee may be shown to establish the fourth element. *Id.* (citing *O'Connor v. Consolidated Coin Caterers Corp.,* 517 U.S. 308, 311-12, 116 S.Ct. 1307, 1310, 134 L.Ed.2d 433 (1996); *Dugan v. Albemarle County Sch. Bd.,* 293 F.3d 716, 721 (4th Cir.2002); *Norton v. Sam's Club,* 145 F.3d 114, 118 (2d Cir.1998)).

In this case the Trial Court determined that plaintiffs, Kelly Williams, Robert Williams and Earlynn Schubert had alleged sufficient evidence to make a *prima facie* case of age discrimination against WTCI. The record supports the Trial Court's finding that these three plaintiffs made a *prima facie* case of age discrimination by their employer. The Trial Court, however, held that summary judgment was appropriate because these three plaintiffs could not show that the reasons for termination proffered by defendant was a pretext. Plaintiffs contend the Trial Court was in error as they had raised genuine issues of material fact, which preclude summary judgment.

The standard for deciding a motion for summary judgment in Tennessee was succinctly stated by our Supreme Court in *Giggers v. Memphis Housing Authority*, 277 S. W.3d 359 (Tenn. 2009):

> Because our inquiry involves a question of law, no presumption of correctness attaches to the judgment, and our task is to review the record to determine whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied. *Hunter v. Brown,* 955 S. W.2d 49, 50-51 (Tenn.1997); *Cowden v. Sovran Bank/Cent. S.,* 816 S. W.2d 741, 744 (Tenn.1991). A summary judgment may be granted only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; *Byrd v. Hall,* 847 S. W.2d 208, 214 (Tenn.1993). The party seeking the summary judgment has the ultimate burden of persuasion "that there are no disputed, material facts creating a genuine issue for trial ... and that he is entitled to judgment as a matter of law." *Id.* at 215. If that motion is properly supported, the burden to establish a genuine issue of material fact shifts to the non-moving party. In order to shift the burden, the movant

must either affirmatively negate an essential element of the nonmovant's claim or demonstrate that the nonmoving party cannot establish an essential element of his case. *Id.* at 215 n. 5; *Hannan v. Alltel Publ'g Co.,* 270 S. W.3d 1, 8-9 (Tenn. 2008). "[C]onclusory assertion[s]" are not sufficient to shift the burden to the non-moving party. *Byrd,* 847 S.W.2d at 215; *see also Blanchard v. Kellum,* 975 S. W.2d 522, 525 (Tenn.1998). Our state does not apply the federal standard for summary judgment. The standard established in *McCarley v. West Quality Food Service.,* 960 S. W.2d 585, 588 (Tenn.1998), sets out, in the words of one authority, "a reasonable, predictable summary judgment jurisprudence for our state." Judy M. Cornett, *The Legacy of Byrd v. Hall: Gossiping About Summary Judgment in Tennessee,* 69 Tenn. L. Rev. 175, 220 (2001). Courts must view the evidence and all reasonable inferences therefrom in the light most favorable to the non-moving party. *Robinson v. Omer,* 952 S. W.2d 423, 426 (Tenn.1997). A grant of summary judgment is appropriate only when the facts and the reasonable inferences from those facts would permit a reasonable person to reach only one conclusion. *Staples v. CBL & Assocs., Inc.,* 15 S. W.3d 83, 89 (Tenn.2000). In making that assessment, this Court must discard all countervailing evidence. *Byrd,* 847 S. W.2d at 210-11. Recently, this Court confirmed these principles in *Hannan* [*v. Alltel Pub. Co.,* 270 S. W. 3d. 1 (Tenn. 2008)].

*Giggers* at 363 -364.

Thus, under the summary judgment framework employed by the Tennessee Supreme Court, WTCI bears the burden of showing there are no genuine issues of material fact by either producing evidence "that affirmatively negates an essential element of the plaintiffs' claim or show that the plaintiffs can not prove "an essential element" of their claim at trial. *Kinsler v. Berkline, LLC*, 320 S.W.3d 796, 800 (Tenn. 2010)(citing *Mills v. CSX Transp., Inc.,* 300 S.W.3d 627, 631 (Tenn.2009)). The Trial Court found that WTCI had met this burden by showing, through the affidavit of Paul Grove, that the reason for plaintiffs' terminations was not their age, but rather the terminations were part of a reorganization of the station to avoid "overlapping job responsibilities, inefficiencies and unprofitable practices in the organization." The Trial Court concluded that, when the burden shifted back to the plaintiffs, they could not show that the reasons for termination proffered by WTCI were a pretext.

The Tennessee Supreme Court, in *Kinsler*, recently held that in the event genuine issue of material facts are easily ascertainable and dispositive of a motion for summary judgment, conducting the *Hannan* burden-shifting analysis described above in *Giggers*, 277 S.W.3d at 363 - 364, is unnecessary to the disposition of this case. Mr. Kinsler filed a retaliatory discharge claim alleging that his employer, Berkline, had terminated his

employment because he refused its offer to settle his workers' compensation claim. Berkline moved for summary judgment based on the allegation that Mr. Kinsler could not prove that his rejection of Berkline's settlement offer was a substantial factor in its motivation to terminate Mr. Kinsler's employment. Berkline proffered evidence that it had terminated Mr. Kinsler for the legitimate reason that he could not perform all of the responsibilities of his job because of a lifting restriction imposed on him by his physician. The trial court granted summary judgment based on the burden shifting analysis discussed above. *Kinsler* at 799.

The Supreme Court held that "determining whether the evidence identified by Berkline is sufficient to satisfy its burden of production is unnecessary if Mr. Kinsler "has clearly stated a genuine issue of material fact that would preclude summary judgment." *Id.* at 800 (citing *Mills v. CSX Transp., Inc.,* 300 S.W.3d 627, 634 (Tenn.2009). The Court noted that Kinsler had identified facts in the record that called into question Berkline's proffered reason for his discharge. *Id.* The Court concluded that, based on its review of the record, there were genuine issues of material fact as to whether Berkline discharged Mr. Kinsler for the reasons Berkline had stated or because Mr. Kinsler rejected its settlement offer. The Court, taking the strongest legitimate view of the evidence in favor of Mr. Kinsler, allowing all reasonable inferences in his favor, and discarding all countervailing evidence, held that the record showed that Berkline did not enforce the lifting restrictions as to Mr. Kinsler until three days after he rejected its settlement offer. Based on this evidence, a reasonable person could reach more than one conclusion as to whether Mr. Kinsler's rejection of the settlement offer was a substantial factor in Berkline's decision to discharge him. The Court concluded that the genuine issue of material fact precluded summary judgment and that further analysis was unnecessary. *Id.* at 801.

Here, as in *Kinsler*, there are genuine issues of material fact that are readily ascertainable from the record as to whether WTCI terminated Ms. and Mr. Williams and Ms. Schubert for the reasons claimed by Mr. Grove or, as plaintiffs contend, because of their age. Because there are genuine issues of material fact, summary judgment is precluded. The record contains disputed evidence to the effect that Mr. Grove repeatedly made age discrimination statements to the plaintiffs and others during his first three months of employment, and whether Grove had a preference for employees and board members who were young, attractive, and energetic over employees who were older. The record contains disputed evidence on whether Grove removed Kelly Williams and others from their on-air duties based on age, and whether Ms. Williams and others were removed from on-air duties and replaced with individuals who were significantly younger. There is also disputed material evidence as to whether Ms. Schubert was terminated because of her lack of skills or because of her age, and was replaced by a significantly younger person. Finally, there is disputed material evidence as to whether Paul Grove was a credible witness.

-11-

Based on the foregoing, the Trial Court erred when it granted summary judgment in favor of WTCI and against Kelly Williams, Robert Williams and Earlynn Schubert. The summary judgment is reversed and the cause will be remanded back to the Trial Court as to the claims of these plaintiffs.

The Trial Court found that Barbara Dadswell met the first three elements of a *prima facie* case of age discrimination. She was a member of the protected class of persons forty years of age or older, her work performance satisfied the employer's reasonable expectations, and that she was constructively terminated as a jury could find that a reasonable employee would have felt compelled to resign under the circumstances alleged and a reasonable employer could have foreseen that she would resign. *See Wilson v. Rubin*, 104 S.W.3d at 52 (elements of *prima facie* case of age discrimination) and *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 34 (Tenn. 1996)(elements of constructive discharge). As to the fourth element of a *prima facie* case of age discrimination, that the termination occurred under circumstances giving rise to an inference of discrimination based on age, the Trial Court held that Ms. Dadswell had not met this element. This element can be satisfied by presenting proof that the employee was replaced by someone substantially younger. *Wilson* at 52 (citing *O'Connor v. Consol. Coin Caterers Corp.,* 517 U.S. 308, 311-12, 116 S.Ct. 1307, 1310, 134 L.Ed.2d 433 (1996); *Dugan v. Albemarle Co. Sch. Bd.,* 293 F.3d 716, 721 (4th Cir.2002); *Norton v. Sam's Club,* 145 F.3d 114, 118 (2d Cir.1998). However, when an employer assigns the duties of a terminated employee among existing employees, irregardless of the ages of those employees, it is not considered a replacement for purposes of age discrimination analysis. *Lilley v. BTM Corp.*, 958 F.2d 746, 752 (6th Cir. 1992). Based on the undisputed facts Ms. Dadswell's various duties were absorbed by four existing employees, one older than Ms. Dadswell and three younger than Ms. Dadswell. Thus, the Trial Court rightly concluded that Ms. Dadswell was not "replaced" by a significantly younger employee.

The Trial Court also rejected Ms. Dadswell's argument that the fourth element of the *prima facie* case for age discrimination was met because she was subjected to age-biased comments. The Court pointed out that Ms. Dadswell's affidavit provides many of the exact same allegations of Mr. Grove's age-biased comments provided in the other plaintiffs' affidavits, despite the fact that Ms. Dadswell was not employed at the station when those comments were allegedly made to the other plaintiffs. Thus, the Court concluded that the alleged ageist comments could not have been based on her personal knowledge as required by Tenn. R. Civ. P. 56.06 and discounted those allegations. The Trial Court also rejected Ms. Dadswell's assertions that Mr. Grove made age-biased comments because these assertions were general, conclusory and without any direct quotes or support. The Trial Court also pointed to Ms. Dadswell's statement in her affidavit that after the Nielsen Report incident "attitudes changed at WTCI regarding me" as evidence that Ms. Dadswell's claim of

constructive termination were in fact related to that incident and not to age discrimination. A review of the Dadswell affidavit supports the Trial Court's finding that Ms. Dadswell's claims regarding age-biased comments were not based on first hand knowledge and were too general and conclusory to meet the fourth element of a *prima facie* case of age discrimination. The Trial Court did not err when it held that summary judgment was appropriate as to Barbara Dadswell's claim of age discrimination.

Ms. Dadswell also stated a claim of retaliatory discharge pursuant to common law and statute. She claimed that she was constructively discharged after she refused to make a copy of the Nielsen Report which she believed was illegal. A claim of retaliatory discharge is an exception to the employment at will doctrine.[6] A plaintiff seeking to establish a claim for retaliatory discharge under Tennessee common law must prove the following: (1) that an employment-at-will relationship existed; (2) that the employee was discharged; (3) the reason for the discharge was that the employee attempted to exercise a statutory or constitutional right, or for any other reason which violates a clear public policy evidenced by an unambiguous constitutional, statutory, or regulatory provision; and (4) that a substantial factor in the employer's decision to discharge the employee was the employee's exercise of protected rights or compliance with clear public policy. *Gager v. River Park Hosp.*, M2009-02165-COA-R3-CV, 2010 WL 4244351 at *4 (Tenn. Ct. App. Oct. 26, 2010).

To establish a claim of retaliatory discharge under the Tennessee Public Protection Act (TPPA), Tenn.Code Ann. § 50-1-304, the Plaintiff must show the following four elements: (1) the plaintiff is an employee of the defendant employer; (2) that she refused to participate in, or remain silent about, "illegal activities" as defined in the statute; (3) that she was terminated from her employment; and (4) that an exclusive causal relationship exists between her refusal to participate in/remain silent about illegal activities and her termination. *Wisdom v. Wellmont Health Sys.*, E2010-00716-COA-R9-CV, 2010 WL 5093867 at * 3 (Tenn. Ct. App. Dec. 10, 2010)(citing *Voss v. Shelter Mut. Ins. Co.,* 958 S.W.2d 342 (Tenn. Ct. App.1997)). "Illegal activities" are defined in the statute as "activities that are in violation of the criminal or civil code of this state or the United States or any regulation intended to protect the public health, safety or welfare." *Wisdom* at *3; Tenn.Code Ann. § 50-1-304(a)(3).

The Trial Court held that Ms. Dadswell had not made a *prima facie* case of retaliatory discharge under either the common law or the TPPA. There was no controversy that Ms. Dadswell was an at-will employee of WTCI and, as discussed above, the Court had

---

[6] Under the employment at will doctrine, employment for an indefinite term may be terminated by either the employer or the employee at any time, for good cause, bad cause, or no cause at all. *Franklin v. Swift Transp. Co., Inc.*, 210 S.W.3d 521, 527 (Tenn. Ct. App. 2006)(citing *Guy v. Mutual of Omaha Ins. Co.,* 79 S.W.3d 528, 534-35 (Tenn.2002)).

concluded that a reasonable jury could find that she had been constructively discharged based on a hostile work environment. Additionally, the Court noted that Dadswell asserted in her affidavit that the hostility toward her occurred after she refused to make a copy of the Nielsen Report and that much of the hostility was related to that incident. The Court found that, if believed, a jury could conclude that her refusal to copy the Nielsen Report was either the sole or a substantial cause of the actions that led to the creation of a hostile work environment and to her constructive discharge. A review of the record shows that the Trial Court's findings that three of the four elements of a retaliatory discharge claim, pursuant to either common law or the TPPA, were sufficiently alleged was not error.

The Trial Court stated that whether Ms. Dadswell had met her *prima facie* case as to the fourth element was not so clear. Under common law, the termination had to be because the employee exercised a "statutory or constitutional right, or for any other reason which violates a clear public policy evidenced by an unambiguous constitutional, statutory, or regulatory provision." *Gager* at *4. Under the TPPA, the termination had to be because the employee refused to participate in, or remain silent about, "illegal activities" defined as "activities that are in violation of the criminal or civil code of this state or the United States or any regulation intended to protect the public health, safety or welfare." *Wisdom* at * 3. Based on the analysis and holding of *Franklin v. Swift Trans. Co. Inc.*. 210 S.W. 3d 521 (Tenn. Ct. App. 2006), the Trial Court found that the employer's requirement that Ms. Dadswell copy the Nielsen Report did not require her to perform an activity that was hazardous to her health or to others, she was not asked to perform an act that would jeopardize the financial stability of an innocent victim nor did she point to any public policy that would be violated by this action based on any unambiguous statute, regulation or constitutional provision. Thus the Trial Court concluded that Ms. Dadswell could not satisfy the necessary element of a *prima facie* retaliatory discharge claim that her termination "was for a reason which violates clear public policy or for refusal to participate in illegal activities as defined in the statute" and granted defendant's motion for summary judgment on this claim.

Plaintiff/appellant argues that whether it is actually illegal to copy a Nielsen Report is not dispositive to whether this element of a retaliatory discharge claim has been met. Ms. Dadswell was told by a Nielsen employee that WTCI could not have or copy the report, and she was told by Ms. Wager that it was illegal to make a copy. She claims to have believed those statement, and, based on that belief, she refused to make the copy.[7] Our Supreme Court, in *Mason v. Seaton*, 942 S.W.2d 470 (Tenn. 1997), held that the TPPA's protection

_____

[7] Plaintiff argues that the information given to her by Nielsen is not inadmissible hearsay because it is not offered to prove the truth of the statement (that it was unlawful). It is offered to show that she had a good-faith belief that it was unlawful.

extends to employees who have reasonable cause to believe a law, regulation, or rule has been violated or will be violated. *Mason* at 472 (citing *Melchi v. Burns Int'l Security Services, Inc.,* 597 F. Supp. 575, 583 (E. D. Mich. 1984)). Thus, plaintiff argues, she had a good faith belief that if she were to copy the Report, she would be breaking copyright laws and based on her good faith belief, she objected to the directive to copy the report and refused to do so.

Under both the TPPA and common law, the "illegal activity" or violation by the employer must implicate important public policy concerns. Thus, Ms. Dadswell must not only show that she believed that copying the report was illegal but that her refusal to do so serves "a public purpose [that] should be protected. So long as the employee's actions . . . seek to further the public good, the decision to expose illegal or unsafe practices should be encouraged." *Guy. Mut. of Omaha Ins. Co.*, 79 S.W. 3d 528, 537 n. 4 (Tenn. 2002). Plaintiff relies on the case of *VanCleave v. Reelfoot Bank*, W2008-01559-COA-R3-CV, 2009 WL 3518211 (Tenn. Ct. App. Oct. 30, 2009) for its holding that a plaintiff such as Ms. Dadswell who has "refused to participate" in an illegal activity does not have to show that she had a "subjective intent to protect the public." In *VanCleave*, the Court of Appeals recognized two distinct types of retaliatory discharge claims, the "refusal to participate" verus "whistleblower." The Court held that in a "refusal to participate" case, the plaintiff has to show that the laws or rules involved were ones that invoked important public policy but does not have to show that concern for the public was the reason she failed to participate in the illegal activity. *Id.* at * 7 - 9. Thus, under the holding of *VanCleave*, Ms. Dadswell is not required to show that her motivation in avoiding violation of a statute was concern for the public.

The plaintiff in *VanCleave* alleged in her amended complaint multiple statutes and regulations that would have been violated had she followed her employer's directives. The *VanCleave* trial court then had the opportunity to examine the statutes and regulations cited by plaintiff in detail to determine if they evidenced a clear expression of an important public policy." *Id.* at * 4 -5. This Court need not even reach the public purpose stage of the analysis as the Trial Court and the *VanCleave* court did. Ms. Dadswell's complaint sets out that she believed that her copying the Nielsen Report would "unlawfully violate the copyright of Nielsen Media Research, the entity that complies and distributes the Nielsen Ratings for television." She goes on to state that [o]nly members of the Nielsen Media Research Network are entitled to copies of the Nielsen reports." This is the only reference in the record to the "law" Ms. Dadswell claims that she was asked to violate. Nowhere in the record is there evidence that the Nielsen Report in question was actually copywrited , thus there is a question of material fact regarding whether WTCI engaged in illegal activity and whether Ms. Dadswell belief that it was so engaged was reasonable. In another retaliatory discharge case this Court reversed a summary judgment in a case involving a question of fact

-15-

as to whether the employer was engaging in illegal activity. The Court stated:

> If any doubt remains with respect to the legality of Tractor Supply's activities, summary judgment is not appropriate. *See Hannan [v. Alltel Publ'g Co.]*, 270 S.W.3d [1 at 8-9 [(Tenn. 2008)]. If any doubt regarding the whether Tractor Supply's activities were illegal or in contravention of an important public policy, we must then consider whether any doubt remains with respect to whether Mr. Gossett's alleged refusal to participate in those activities was a substantial factor in Tractor Supply's decision to terminate his employment.

*Gossett v. Tractor Supply Co., Inc.*, M200702530COAR3CV, 2009 WL 528924 at * 14 (Tenn. Ct. App. Mar. 2, 2009), *aff'd*, 320 S.W.3d 777 (Tenn. 2010). The Court went on to find that after reviewing the entire record there was an issue of material fact with respect to plaintiff's allegations that his employer engaged in illegal activities or activities in contravention of public policy and reversed the trial court's summary judgment. *Id.* Similarly, there is an issue of material fact as to whether the Nielsen Report at issue was subject to copyright law at all and, if it were, did WTCI engage in illegal activity by photocopying the report alone. While Ms. Dadswell argues that the activity did not have to be actually illegal has long as she believed it to be illegal, there is still a question of material fact for a jury of whether her belief in the illegality of the action was reasonable. Consequently, we find that there are questions of material fact as to Ms. Dadswell's retaliatory discharge claim, and the Trial Court erred when it granted summary judgment to WTCI on this claim.

The Trial Court erred when it granted summary judgment on the age discrimination claims of Kelly Williams, Robert Williams and Earlynn Schubert. We reverse summary judgment on those claims and remand to the Trial Court. The Trial Court erred when it granted summary judgment on the retaliatory discharge claims of Barbara Dadswell. Summary judgment on that claim is reversed and remanded to the Trial Court.

The cost of the appeal is charged to defendant, The Greater Chattanooga Public Television Corporation.

_____
HERSCHEL PICKENS FRANKS, P.J.