NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0672n.06

No. 10-6520

FILED

Sep 14, 2011

LEONARD GREEN, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

WAYNE WEBB,

    Plaintiff-Appellant,

    v.

SERVICEMASTER BSC LLC,

    Defendant-Appellee.

)
)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TENNESSEE

BEFORE: GIBBONS, ROGERS, COOK, Circuit Judges.

ROGERS, Circuit Judge. Plaintiff Wayne Webb was terminated from his employment at defendant ServiceMaster BSC LLC after Webb received unsatisfactory reviews from his supervisor and failed to meet certain performance goals. Webb, who was fifty-nine at the time of his discharge and has Parkinson's disease, alleges that ServiceMaster terminated him because of his age and/or disability, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, et seq., and the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. § 4-21-101, et seq.[1] The district court granted ServiceMaster's motion for summary judgment, dismissing all of Webb's claims, and Webb appealed. Because Webb did not meet his employer's legitimate expectations at

---

[1] Below, Webb also alleged claims for a hostile work environment, but has forfeited these claims by not pursuing them on appeal. *See Miller v. Administrative. Office of Courts*, 448 F.3d 887, 893 (6th Cir. 2006).

the time of his termination and was not replaced by a significantly younger worker, ServiceMaster did not violate Webb's rights under either the ADEA or the THRA.

ServiceMaster hired Webb as a sales and use tax manager on July 26, 2004. R. 20-2 at 16. Webb worked in ServiceMaster's Memphis, Tennessee office performing technical tax research, overseeing compliance, and completing special projects in the areas of state and local taxation. *Id.* at 28. On January 5, 2005, Webb was diagnosed with Parkinson's disease, after which ServiceMaster periodically granted Webb time off as an accommodation. *Id.* at 73-74.

Through 2007, Webb received satisfactory performance reviews from his then second-level supervisor Barb Connolly. R. 20-4 at 39. Beth Minner, the "Manager in Charge" for the Sales/Use Tax Department in Memphis, served as Webb's immediate first-level supervisor. R. 20-6 at ¶ 4.

In November 2007, Jane Adam replaced Connolly as Webb's second-level supervisor and as Vice President of Tax. R. 20-2 at 49. Shortly thereafter, Adam became concerned that Webb was not meeting the productivity goals required of a manager at the company and, as a result, assigned Webb several projects that she directly supervised. R. 20-4 at 48-50. Adam found Webb's first project, a presentation to the IT group, unacceptable and had to complete the project herself. *Id.* at 57-60, R. 20-6 at ¶ 15.

On July 31, 2008, Adam and Minner gave Webb a negative midyear performance review. R. 20-4 at 50-53, R. 20-6 at ¶ 13. They told Webb that he needed to improve his productivity, project management skills, and judgment. R. 20-4 at 50-53. As a result of this review, Adam placed

Webb on a three-month Performance Improvement Plan ("PIP"), intended to allow Webb to correct the identified deficiencies and improve his job performance. *Id.* at 53.

During the PIP period, Adam continued to supervise Webb directly on several projects, but his performance did not improve. *Id.* at 20. For example, Adam found Webb's summary of a New Jersey tax issue difficult to understand. *Id.* at 81. Further, Adam was dissatisfied with Webb's work on a sales tax manual and an IT outsourcing project and ultimately reassigned the work. *Id.* at 46-47, 72-73. Adam and Minner regularly discussed these issues with Webb during the PIP period. R. 20-6 at ¶ 14.

Shortly after the expiration of the PIP period, Adam recommended that ServiceMaster terminate Webb's employment. R. 20-4 at 88-89. Before making the recommendation, Adam and Minner considered transferring Webb to another position within the tax department, but ultimately determined that Webb lacked the requisite skills. *Id.* at 52. ServiceMaster's human resource department, legal department, and Chief Financial Officer approved Webb's termination. Webb learned of his discharge on December 2, 2008. Webb was fifty-nine years old at the time of his termination. His projects and responsibilities were reassigned to the remaining employees in the tax department. *Id.* at 21. After Webb left, ServiceMaster restructured the tax department, eliminating Webb's former position. *Id.* at 96.

The undisputed record evidence of this case shows that Webb failed to establish a prima facie element of both his age and disability discrimination claims: that he met his employer's legitimate expectations at the time of termination. *See Strickland v. Fed. Express Corp.*, 45 F. App'x 421, 424

(6th Cir. 2002) (requiring an ADEA plaintiff to show he met the "employer's legitimate expectations"); *Barnes v. Goodyear Tire & Rubber Co.*, 48 S.W.3d 698, 708 (Tenn. 2000) (abrogated on other grounds) (stating requirement that plaintiff "met the employer's legitimate expectations" for THRA disability claim).[2] Even disregarding ServiceMaster's proffered nondiscriminatory reason for termination, *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 660-61 (6th Cir. 2000), Webb does not offer probative evidence that he was qualified. First, Webb relies on positive performance reviews from prior years to establish his qualifications at the time of termination. Appellant's Br. 11, R. 20-4 at 38. On facts closely resembling this case, this court in *Strickland* expressly rejected such use of prior year-end performance reviews because they suffered from "staleness" and did not establish that a plaintiff was "qualified at the time of her termination." *Strickland*, 45 F. App'x at 424. As in *Strickland*, this evidence is stale because Webb's performance or ServiceMaster's expectations may have legitimately changed since the prior review period. Second, Webb offered emails in which coworkers requested Webb's assistance on a project, which Webb believes show that his work was adequate and, therefore, met ServiceMaster's expectations.

---

[2] As discussed below, *Gossett v. Tractor Supply Co., Inc.*, 320 S.W.3d 777 (Tenn. 2010) eliminated the burden shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) for Tennessee state law employment discrimination claims, and *Barnes* was abrogated because it applied that framework. However, *Gossett* did not alter the elements required to prove employment discrimination. In fact, *Gossett* explicitly evaluated the elements of the employment discrimination claim at issue in that case. *Gossett,* 320 S.W.3d at 787-89. Post-*Gossett*, Tennessee courts have continued to require that an employee show he met the employer's legitimate expectations to establish a THRA discrimination claim. *See, e.g., Williams v. Greater Chattanooga Pub. Television Corp.*, No. E2010–00771–COA–R3–CV, 2011 WL 1103145, at *6 (Tenn. Court. App. March 25, 2011).

Appellant's Br. 14, R. 23-7. The opinion of Webb's coworkers is irrelevant: under both the ADEA and THRA the relevant test is the legitimate expectations of an *employer*, not a coworker. *See Strickland*, 45 F. App'x at 424. Even if the court were to consider these emails, they do not create a genuine issue of material fact: no reasonable jury could find that one routine request for assistance demonstrates that Webb was meeting the legitimate expectations of his employer. For these reasons, Webb has provided no evidence that he was meeting his employer's legitimate expectations at the time of his termination and, therefore, has not established either his age or disability discrimination claims.

Webb relies on an inapplicable case, *Curry v. Menard, Inc.*, 270 F.3d 473, 478 (7th Cir. 2001), to argue that he need not show he met ServiceMaster's legitimate expectations because the company applied its expectations disparately. *Curry* only excuses a plaintiff from showing she met an employer's expectations in a particular type of situation: where the plaintiff admitted her failure to meet expectations, but provided evidence that other employees were similarly noncompliant but were not punished. *Id.* at 476-78; *McNair v. Bonaventura*, 46 F. App'x. 849, 852 (7th Cir. 2002). In contrast, Webb has not provided any evidence that other employees were similarly deficient but not terminated.[3] It follows that *Curry* does not apply.

Webb also failed to establish that he was "replace[d] by a significantly younger person," a prima facie element of his age discrimination claim. *Corrigan v. U.S. Steel Corp.*, 478 F.3d 718,

---

[3] In fact, the record reflects that Adam placed at least one other employee on a PIP, who was eventually terminated for similar performance issues. R. 20-4 at 40-41. That employee was in her 30s, although she held a different position within the tax department. *Id.*

727 (6th Cir. 2007); *Grosjean v. First Energy Corp.*, 349 F.3d 332, 336 (6th Cir. 2003). An employee is replaced only where "another employee is hired or reassigned to perform the plaintiff's duties." *Grosjean*, 349 F.3d at 336. However, "[s]preading the former duties of a terminated employee among the remaining employees does not constitute replacement." *Lilley v. BTM Corp.*, 958 F.2d 746, 752 (6th Cir. 1992). Following Webb's termination, ServiceMaster restructured the tax group, after which no exact replica of Webb's job existed. R. 20-4 at 96-97; Appellant's Br. 13. Webb's former responsibilities were distributed among existing employees. R. 20-4 at 21. Because no person was hired or reassigned to perform Webb's duties, Webb was not "replaced."

Even if this court were inclined to hold that Webb made out a prima facie case, he cannot establish pretext.[4] *See Ladd v. Grand Trunk Western R.R., Inc.*, 552 F.3d 495, 502 (6th Cir. 2009). ServiceMaster's nondiscriminatory reason for Webb's termination was legitimate: his repeated and documented failure to produce adequate work product during the second half of 2008. Adam had concerns about Webb's productivity, R. 20-4 at 49-50, began supervising him directly and found his work unacceptable or incomprehensible, R. 20-4 at 27, 59. 60, gave Webb a negative midyear performance review, R. 20-4 at 50-53, placed him on a PIP during which Webb failed to improve, R. 20-4 at 71-78, and ultimately recommended Webb's termination for unsatisfactory performance

---

[4] Even though the district court did not evaluate ServiceMaster's nondiscriminatory reason for Webb's termination and did not shift the burden to Webb to establish pretext under *McDonnell Douglas*, 411 U.S. 792, this court is free to affirm the dismissal of Webb's claims on any ground supported by the record. *See, e.g. Sokolnicki v. Cingular Wireless, LLC*, 331 F. App'x 362, 368 (6th Cir. 2009).

and a failure to perform "at the manager level," *Id.* at 88-89.  These reasons, unless rebutted, are legitimate and nondiscriminatory.

Webb has not shown that this proffered reason is pretextual.  First, Webb concedes that ServiceMaster found his performance unsatisfactory and provides no evidence that the termination decision "had no basis in fact," *Macy v. Hopkins Cnty. Sch. Bd. of Educ.*, 484 F.3d 357, 366 (6th Cir. 2007), or that "proffered bases for the plaintiff's discharge never happened," *Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 396 (6th Cir. 2008) (internal citations and quotations omitted).  He concedes he worked on the projects in question, received unsatisfactory reviews, and was terminated. Second, Webb has not produced evidence that his deficient performance "did not actually motivate [ServiceMaster's] action." *Macy*, 484 F.3d at 366.  Although Webb intimates that Adam held personal animus toward him, Adam could not terminate Webb but could only recommend termination to human resources.  Webb has not offered any evidence that the relevant human resources specialist, or Minner who also recommended termination, was motivated by anything other than Webb's unsatisfactory performance.  Third, Webb has not offered any evidence showing that his deficient performance "was insufficient to motivate [ServiceMaster's] action." *Id.*  Ordinarily, a plaintiff proves this by showing "that other employees . . . were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff," *Allen*, 545 F.3d at 396 (internal citations and quotations omitted), but as discussed above Webb has not shown such disparate treatment.  Instead, Webb argues that Adam only reviewed his performance on three projects, which was a fraction of the work Webb performed.  However, Webb

ignores the fact that Minner, his first-level supervisor, also reviewed him, found him deficient, and recommended termination. R. 20-6 at ¶ 13, 14, 25, R. 20-4 at 26. Contrary to Webb's assertion, the termination decision was not based solely on Adam's review. Because Webb provides no material evidence that his conduct was insufficient to motivate ServiceMaster's actions, it is clear that Webb's performance was the sole reason for his termination.

Finally, the parties address the recent opinion of the Tennessee Supreme Court, *Gossett v. Tractor Supply Co., Inc.*, 320 S.W.3d 777, 785 (Tenn. 2010), and argue at length whether *Gossett* established a procedural or substantive rule under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938). This inquiry is unnecessary because regardless of its classification, *Gossett* does not affect the outcome of this case. In *Gossett*, the Tennessee Supreme Court found that "*the shifting burdens* of the *McDonnell Douglas* framework obfuscate the trial court's summary judgment analysis" and therefore held that framework inapplicable. *Gossett*, 320 S.W.3d at 783, 785 (emphasis added). Instead, *Gossett* requires the proponent of summary judgment to "affirmatively negate[] an essential element of the nonmoving party's claim or show[] that the nonmoving party cannot prove an essential element of the claim at trial." *Id.* at 782 Even under *Gossett*, ServiceMaster is entitled to summary judgment because, as detailed above, it has affirmatively show that Webb cannot prove two essential elements of his claims: that he was qualified for his job and that he was replaced by a younger employee. Accordingly, regardless of whether *Gossett* is procedural or substantive, the district court properly dismissed Webb's age and disability discrimination claims.

The judgment of the district court is affirmed.