IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
August 9, 2017 Session

## WARREN R. SCHEDE v. ANTHONY & GORDON CONSTRUCTION CO., INC., ET AL.

### Appeal from the Circuit Court for Anderson County
No. B5LA0236     Donald Ray Elledge, Judge

_____

### No. E2016-02318-COA-R3-CV

_____

A bookkeeper for two companies was terminated after his employers learned that he had a conviction for money laundering and mail fraud arising out of his previous employment. The employee filed suit, alleging that he was terminated because of his age, in violation of the Tennessee Human Rights Act, and his disability, in violation of the Tennessee Disability Act. The employers moved for summary judgment, asserting that the employee was terminated for poor performance and for not disclosing the prior conviction, that these grounds constituted legitimate, nondiscriminatory grounds for termination, and that the employee could not demonstrate that these grounds were a pretext for unlawful discrimination. The trial court granted summary judgment to the employers, and the employee appeals. Finding that there are genuine issues of material fact as to whether the asserted reasons for Plaintiff's termination are pretextual, we reverse the judgment and remand the case for further proceedings.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed; Case Remanded

RICHARD H. DINKINS, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., joined. JOHN WESLEY MCCLARTY, J., dissenting.

John M. Lawhorn and Richard E. Graves, Knoxville, Tennessee, for the appellant, Warren R. Schede.

Janet Strevel Hayes and Chris W. McCarty, Knoxville, Tennessee, for the appellees, Anthony & Gordon Construction Co., Inc. and Chameleon Enterprises, Inc.

# OPINION

## I.    FACTUAL AND PROCEDURAL HISTORY

Anthony & Gordon Construction, Co., Inc., and Chameleon Enterprise, Inc., (collectively "Defendants") were joint employers of Warren Schede ("Plaintiff"), who worked as a bookkeeper/accountant for one or both Defendants for over seven years.

On June 5, 2015, Plaintiff underwent a surgical procedure to replace his pacemaker.  On July 27, Plaintiff began to experience chest pain and difficulty breathing at work and was transported to a hospital.  Defendants asserted that, in the course of attempting to locate Plaintiff's wife, they performed a search of Plaintiff's name and learned that he had been convicted for mail fraud and money laundering committed against one of his former employers, which he had not disclosed at the time of his application for employment with Defendants.  Plaintiff returned to work in August, and on September 11, 2015, his employment was terminated.

On November 9, 2015, Plaintiff filed suit, alleging that he had been terminated because of his age and disability.  In response, Defendants denied the allegations and raised several affirmative defenses, including "that Plaintiff's termination was not as a result of discrimination and/or retaliation. . . . [that Plaintiff was terminated] for legitimate, business reasons. . . [and] after discovering prior bad acts he never revealed related to a previous employer."  After conducting discovery, Defendants moved for summary judgment, contending that the undisputed material facts showed that Plaintiff was terminated for legitimate, non-discriminatory reasons, i.e., "poor performance and the discovery of [Plaintiff's] prior criminal convictions for mail fraud and money laundering."  Plaintiff responded, contending that sufficient evidence existed to support his discrimination claims.

A hearing on the motion was held on October 17, 2016, at the conclusion of which the court granted the motion; a transcript of the ruling was incorporated into an order entered on October 27, which held that "Defendants set forth legitimate, non-discriminatory, and non-pretextual reasons for terminating the employment of Plaintiff," and dismissed the case.  Plaintiff appeals, articulating the following issue:

> Whether the Trial Court misapplied the summary judgment standard by failing to take the strongest legitimate view of the evidence in favor of the Plaintiff, failing to allow all reasonable inferences in favor of the Plaintiff, and failing to discard all countervailing evidence with respect to Plaintiff's discrimination claims?

## II.   STANDARD OF REVIEW

The dispositive issue in this appeal is whether the Trial Court erred in granting summary judgment. As our Supreme Court has instructed:

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04.   We review a trial court's ruling on a motion for summary judgment de novo, without a presumption of correctness. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997); *see also Abshure v. Methodist Healthcare–Memphis Hosp.*, 325 S.W.3d 98, 103 (Tenn. 2010).   In doing so, we make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied. *Estate of Brown*, 402 S.W.3d 193, 198 (Tenn. 2013) (citing *Hughes v. New Life Dev. Corp.*, 387 S.W.3d 453, 471 (Tenn. 2012)).

\* \* \*

[I]n Tennessee, as in the federal system, when the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense. . . Tennessee Rule 56.03 requires the moving party to support its motion with "a separate concise statement of material facts as to which the moving party contends there is no genuine issue for trial." Tenn. R. Civ. P. 56.03. . . When such a motion is made, any party opposing summary judgment must file a response to each fact set forth by the movant in the manner provided in Tennessee Rule 56.03. "[W]hen a motion for summary judgment is made [and] . . . supported as provided in [Tennessee Rule 56]," to survive summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading," but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, "set forth specific facts" *at the summary judgment stage* "showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06.   The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586, 106 S. Ct. 1348.   The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party. . . However, after adequate time for discovery has been provided, summary

3

judgment should be granted if the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the existence of a genuine issue of material fact for trial. Tenn. R. Civ. P. 56.04, 56.06. The focus is on the evidence the nonmoving party comes forward with at the summary judgment stage, not on hypothetical evidence that theoretically could be adduced, despite the passage of discovery deadlines, at a future trial.

*Rye v. Women's Care Cntr. of Memphis, MPLLC*, 477 S.W.3d 235, 250, 264-65 (Tenn. 2015).

We review the trial court's ruling on a motion for summary judgment *de novo* with no presumption of correctness, as the resolution of the motion is a matter of law. *Martin v. Norfolk S. Ry.*, 271 S.W.3d 76, 84 (Tenn. 2008); *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002). We view the evidence in favor of the non-moving party by resolving all reasonable inferences in its favor and discarding all countervailing evidence. *Stovall v. Clarke*, 113 S.W.3d 715, 721 (Tenn. 2003); *Godfrey*, 90 S.W.3d at 695.

## III.   ANALYSIS

Appellant alleges that he was discriminated against on the basis of his age, in violation of the Tennessee Human Rights Act ("THRA"), and his disability, in violation of the Tennessee Disability Act ("TDA").

The THRA, codified at Tennessee Code Annotated sections 4-21-101, *et seq.*, "prohibits employers from discriminating against their employees who are forty years old or older because of their age"; specifically, it "prohibits age discrimination in hiring, firing, fixing compensation, or defining the terms and conditions of employment." *Williams v. Greater Chattanooga Pub. Television Corp.*, 349 S.W.3d 501, 509 (Tenn. Ct. App. 2011) (citing Tenn. Code Ann. § 4-21-401(a)(1)-(3), (b)); *Wilson v. Rubin*, 104 S.W.3d 39, 48 (Tenn. Ct. App. 2002)). To recover for unlawful age discrimination, an employee must prove that "considerations of age not only played a role in but determinatively influenced the employer's decision." *Williams*, 349 S.W.3d at 509 (citing *Wilson,* 104 S.W.3d at 51-52).

The TDA prohibits employers from discriminating against employees on the basis of an employee's disability. Tenn. Code Ann. § 8-50-103(b); *Bennett v. Nissan N. Am., Inc.*, 315 S.W.3d 832, 841 (Tenn. Ct. App. 2009). The TDA "embodies the rights and definitions provided by the [THRA]." *Barnes v. Goodyear Tire & Rubber Co.*, 48 S.W.3d 698, 705 (Tenn. 2000), *abrogated on other grounds by Gossett v. Tractor Supply Co., Inc.,* 320 S.W.3d 777 (Tenn. 2010). When an employee brings a claim under the TDA, the employee must prove three elements to prevail: "'(1) that the individual was qualified for the position; (2) that the individual was disabled; and (3) that the individual suffered

4

an adverse employment action because of that disability.'" *Bennett*, 315 S.W.3d at 841 (quoting *Barnes,* 48 S.W.3d at 705).

Employees pursuing an employment discrimination claim under the THRA or TDA may carry their burden of proof by introducing either direct or indirect evidence. *Bennett*, 315 S.W.3d at 841 (citing Barnes, 48 S.W.3d at 705 (recognizing that "[t]he third element, or causation element, [of a TDA claim] may be established by either direct or indirect evidence of discrimination")); *Wilson,* 104 S.W.3d at 49 (citing *Moore v. Nashville Elec. Power Bd.,* 72 S.W.3d 643, 651 (Tenn. Ct. App. 2001); *Perlberg v. Brencor Asset Mgt., Inc.,* 63 S.W.3d 390, 394–95 (Tenn. Ct. App. 2001)). Where the employee attempts to show discrimination by indirect evidence, the employee must first establish a *prima facie* case of discrimination. *Wilson,* 104 S.W.3d at 50. This "creates a rebuttable presumption that the employer unlawfully discriminated against the employee." *Id.* "The effect of the presumption is to place on the employer the burden of producing evidence that the challenged employment action was taken for legitimate, non-discriminatory reasons." *Id.* If the employer succeeds in producing evidence showing a legitimate, non-discriminatory reason for the adverse employment action, the employee then must "demonstrate that the employer's proffered reasons are pretextual and that unlawful discrimination was the true reason for the challenged employment action." *Id.*

In their motion, Defendants asserted that they "have submitted affirmative evidence that the Plaintiff was terminated from their employment, not because of his age or alleged disability, but because of his poor performance and the discovery of his prior criminal convictions for mail fraud and money laundering."[1] In the Memorandum supporting the motion, Defendants assumed for the purposes of summary judgment that Plaintiff could show a *prima facie* case of discrimination on the basis of age and disability; they argued that Plaintiff's evidence was insufficient to establish his claim because "[t]he Plaintiff cannot demonstrate through significant probative evidence that these legitimate, nondiscriminatory reasons are pretextual in nature." The effect of Defendants' concession was to place the burden on them to produce evidence in support of their contention that Plaintiff was terminated for legitimate, nondiscriminatory reasons, i.e., poor performance and an undisclosed criminal conviction. *See Wilson,* 104 S.W.3d at 51.

---

[1] In support of the motion Defendants filed a memorandum of law and the following:

- Excerpts from the Deposition Transcript of Plaintiff Warren Schede;
- Excerpts from the Deposition Transcript of Brandy Justice;
- Excerpts from the Deposition Transcript of Jack Sherrod;
- Affidavit of Brandy Justice;
- Responses to Requests for Admission from Plaintiff; and
- Defendant's Responses to Plaintiff's First Set of Request for Production of Documents.

In compliance with Tennessee Rule of Civil Procedure 56.04, Defendants filed a Statement of Material Facts, to which Plaintiff responded; the facts which Plaintiff did not dispute are as follows:[2]

1. This matter arises out of Plaintiff Warren Schede's joint employment with the Defendants.

2. The Plaintiff was employed by the Defendants as a bookkeeper from July 21, 2008 until his termination on September 11, 2015.

3. The Plaintiff's primary job tasks included handling accounts receivable, accounts payable, certified payroll, contracts, and general accounting.

4. The Plaintiff's job tasks would include submitting biannual and annual accounting reports to Defendants' accountant, Jack Sherrod.

6. Defendants are contractors who service federal contracts that require bonds.

7. In order to obtain the requisite bonds, the Defendants' must submit accurate biannual and annual reports to bonding agents.

8. If the Defendants are not bonded, they are unable to bid for government contracts.

14. The Plaintiff was notified of many of his errors by email from his supervisor, Ms. Brandy Justice.

RESPONSE: Plaintiff agrees it is undisputed that he from time to time received e-mails from Brandy Justice and that several of those e-mails are in the summary judgment record. It is disputed that "many" of the errors or concerns addressed in those e-mails were problems of his making since the problems most often were attributable to Ms. Justice herself.

15. Due to the Plaintiff's noticeable decline in performance, the Defendants began looking for additional staff to supplement the Plaintiff's work.

RESPONSE: The first statement of fact is that prior to Plaintiffs termination, Defendants began looking for another employee to perform some of Plaintiffs job duties. This fact is undisputed. The second statement

[2] Plaintiff denied in part the assertions in numbers 14, 15, and 39; we have quoted the entire response in the interest of completeness and clarity. We have only considered the undisputed parts in our analysis.

of fact is that this search was undertaken "due to Plaintiff's noticeable decline in performance." This fact is disputed.

16. In the spring of 2015, the Defendants hired Cindy Bias to handle the Plaintiff's certified payroll tasks.

19. On June 4, 2015, the Plaintiff underwent surgery to replace a defibrillator and pacemaker.

20. On July 27, 2015, the Plaintiff experienced a medical emergency at work and was transported to the hospital by ambulance.

22. In 1994, the Plaintiff pled guilty to mail fraud and money laundering in the U.S. District Court for the Eastern District of Tennessee.

23. Plaintiffs convictions arose out of the Plaintiff's position as Division Vice President and Controller of the Retail Division of Clayton Homes, Inc.

24. During Plaintiffs employment with Clayton Homes, Inc. the Plaintiff transferred $2,979,709.00 in corporate funds into his personal banking account for his personal benefit.

25. The Plaintiff served three years in federal prison for his crimes.

29. On September 11, 2015, the Defendants discovered that the Plaintiff had written a paycheck to an employee in the wrong amount at the incorrect pay rate.

33. The Plaintiff agreed he was never harassed at work because of his age.

34. The Plaintiff admitted he has never known the Defendants to discriminate against anyone because of their ages.

35. The Defendants employ or have employed multiple persons over the age of fifty including owner Richard Justice (age 58) and Jerry Crowe (age 61), the Plaintiff's immediate coworker at the time of his termination.

36. As of November 25, 2015, twenty-six (26) of Defendants' fifty-four (54) employees are over the age of fifty (50) years old.

38. The Plaintiff and owner Richard Justice had conversations about their physical ailments, often commiserating about their heart conditions.

7

39. The only direct "evidence" the Plaintiff points to is that his supervisor, Brandy Justice, allegedly commented that Plaintiff had not "been up to normal since [he] had [his pacemaker] battery put in."

RESPONSE: This statement of purported fact incorporating the term "direct 'evidence'" is interpreted as addressing the type of evidence in discrimination actions understood as "direct evidence," as opposed to "circumstantial evidence." Based on that understanding, it is admitted that one aspect of the direct evidence of discrimination in this case is the fact referenced in this paragraph, which is undisputed. Plaintiff has additional direct evidence, however, such that the statement is disputed to the extent it does not include this additional evidence.

40. After the Plaintiff's termination and sometime in October 2015 (at the latest), the Defendants learned that the Plaintiff made significant errors in his reports submitted to the Defendants' accountant, Jack Sherrod.

42. The Defendants were informed that the gross profit related to Anthony & Gordon's "Work In Progress" reported by the Plaintiff was in error by more than $500,000.00.

43. The Plaintiff admitted to making the $500,000.00 error.

44. The Plaintiff acknowledged the importance of accurately reporting the companies' "Work In Progress" in that these amounts allow the companies to determine whether they are even profitable.

45. The Plaintiff testified as follows:

> Mr. McCarty: Do you consider that a major error to be off by half a million dollars?
>
> Plaintiff: I'd say that's a pretty good error, yes, sir.

47. The Defendants have worked from September 2015 on to reconstruct and reconcile the Defendants' financial records that were improperly maintained by Warren Schede.

49. Since September 2015, Anthony & Gordon has been unable to submit bids for any government contracts due to an inability to submit reports required by bonding agents.

50. The Defendants' inability to bid for new work has paralyzed any growth.

These undisputed facts, which were supported by admissions, deposition excerpts, and affidavits, satisfied the Defendants' burden to articulate legitimate nondiscriminatory reasons for Plaintiff's termination and were evidence supporting those reasons.[3] The burden then shifted to Plaintiff to produce evidence creating a genuine issue of fact that the reasons for his termination proffered by Defendants were pretextual and his age and disability were the true reasons for his termination. *Wilson*, 104 S.W.3d at 50.

As part of his opposition to the motion for summary judgment, Plaintiff filed a Statement of Additional Undisputed Material Facts;[4] those which we have determined to be pertinent to the issue of pretext are the following:

---

[3] In his brief, Plaintiff repeatedly attempts to qualify his response to Defendants' proffered legitimate, non-discriminatory reasons for his termination, referring to the reasons as "supposed legitimate, nondiscriminatory grounds," "purported legitimate reasons," etc.; on appeal, Plaintiff does not argue that the trial court erred in holding that Defendant had satisfied its burden to articulate legitimate, nondiscriminatory reasons for his termination.

[4] Plaintiff filed an appendix to his Response to Plaintiff's Motion for Summary Judgment, which included the following, in addition to his statement of additional facts:

- Deposition of Plaintiff, Warren R. Schede, April 18, 2016
- Deposition of Brandy Justice, April 19, 2016
- Deposition of Richard Justice, April 21, 2016
- Declaration of Warren R. Schede, September 13, 2016
- Deposition of Jack Sherrod, July 15, 2016
- Deposition of Melody Compton September 12, 2016
- Deposition of Cindy Bias, July 13, 2016
- Declaration of Warren Schede;
- Document 1, A&G's response to Plaintiff's Interrogatory No. 5;
- Document 2, Brandy Justice e-mail re: typing errors;
- Document 3, Notice of Written Reprimand;
- Document 4, Late-Filed Exhibit 56;
- Document 5, Returned payroll check;
- Document 6, Chameleon checking account statement;
- Document 7, Brandy Justice e-mail re: Doctor appointments;
- Document 8, Jack Sherrod September 12, 2015 e-mail;
- Document 9, Brandy Justice — Schede e-mail exchange re: delayed payments;
- Document 10, Collection of e-mails re: failure to follow proper payroll process; and
- Document 11, Tennessee Department of Labor termination report form.

52. Plaintiff and Brandy Justice had a conversation after his hospitalization in which Ms. Justice stated in a "pretty upset" tone, "you just haven't been up to par since you had your battery replacement [in June 2015]."

53. After his hospitalization, Plaintiff began to experience carpal tunnel symptoms in one of his hands and made Brandy Justice aware of this problem.

54. The carpal tunnel symptoms Plaintiff was experiencing following his hospitalization in July 2015 did not interfere with his ability to perform his job duties, except for a few typographical errors in e-mails.

55. After informing Brandy Justice of this additional disability in his hand, she began to criticize him for typing errors.

56. While Defendants acknowledge following the concept of "progressive discipline," they never once in Plaintiff's seven (7) years of employment disciplined him for a job-related problem until the week prior to his termination.

57. The only two (2) alleged incidents of payment error Defendants documented occurred on September 8 and 11, 2015, and within only a few days of interviewing and hiring Plaintiffs replacement.

58. The purported "written reprimand" to Plaintiff dated September 8, 2015, is unsigned and was never provided to Plaintiff while he was employed.

59. Plaintiff never saw the September 8, 2015 written reprimand until it was produced by Defendants in the course of discovery in this action.

60. Neither Brandy Justice nor anyone else with Defendants ever discussed with Plaintiff any "problem" with writing checks to incorrect individuals prior to his termination.

62. Brandy Justice cannot state the number of prior instances Plaintiff supposedly issued a check payable to the wrong individual.

63. Defendants could not produce copies of the supposedly erroneous check and the corrected payment on which the September 8, 2015 "written reprimand" was premised.

72. When Melody Compton interviewed with Defendants on September 9 or 10, 2015 for the purpose of replacing Plaintiff, Brandy Justice told her

that Plaintiff had "been ill" and that Plaintiff had "a heart attack," and that he had trouble on account of his age.

73. During that same interview between Melody Compton and Brandy Justice, Ms. Justice stated that Plaintiff "was going to be retiring soon."

74. In that same interview involving Mr. Compton and Ms. Justice, Brandy Justice told Ms. Compton that Plaintiff "was getting older, and he was looking to retire soon, so he was having some difficulties due to his age."

75. The actual manner by which Plaintiff's wife was identified following Plaintiffs medical emergency in late July 2015 was through a source long known by the Justices to be a family member of Plaintiff, not a Google search.

76. When Plaintiff was hired, Defendants performed a criminal background check on him.

77. At the time of hiring Plaintiff, Defendants obtained a signed authorization from him to obtain a criminal background check.

78. Brandy Justice submitted a signed authorization from Plaintiff at the time of his hire for a background check and received a report in return.

79. When Defendants were asked to produce a copy of the criminal background report received with respect to Plaintiff at the time of his hire, Brandy Justice claimed it is now missing.

80. Brandy Justice is unable to explain why the criminal background report received with respect to Plaintiff at the time of his hire does not exist or how/why it disappeared.

81. Brandy Justice is not aware of any other employee whose criminal background check is now missing.

82. Richard Justice and Brandy Justice decided to terminate Plaintiff's employment the very same day he was transported by ambulance from Defendants' offices.

83. No management representative of Defendants ever spoke to Plaintiff prior to his hospitalization in 2015 about any supposed decreasing job performance.

84. In March or April 2015, Defendants' President, Richard Justice, remarked to Defendants' accountant, Jack Sherrod, that he hoped Plaintiff

11

remained an employee for as long as Richard Justice was associated with the business.

85. Following Plaintiffs termination and replacement by Melody Compton, when Ms. Compton would approach Brandy Justice to complain about the demands of the job and her inability to keep up with those, Brandy Justice would often reply to the effect of "Warren didn't have trouble with it."

86. Following Plaintiffs termination and replacement by Melody Compton, when Ms. Compton would approach Brandy Justice to complain about the demands of the job and her inability to keep up with those, Brandy Justice would remark how Plaintiff was able to meet deadlines.

87. Cindy Bias's hiring was not a consequence of Plaintiffs alleged inability to do his job, but a recognition that his job had grown beyond the capability of one person to perform.

88. When Cindy Bias commenced work in June 2015, her work schedule consisted of a three (3) day, eighteen (18) hour work week

92. Most instances of delayed payments referenced in the "multitude of e-mails between Ms. Justice and Plaintiff," which were submitted into the summary judgment record by Defendants as documenting alleged "performance issues" experienced by Plaintiff in 2015, were in fact attributable to Brandy Justice's specific instruction to delay payment when cash flow was slow.

93. Plaintiff did not have check writing authority and therefore could not handle all required company payments on his own.

94. In order to issue a payment, Plaintiff first had to obtain Brandy Justice's approval of the payment and thereafter have her manually sign the check.

95. Plaintiff regularly experienced instances where he would seek Brandy Justice's approval of an invoice or provide her an unsigned check for payment, but not receive anything back from her for weeks.

96. Other e-mail exchanges in the summary judgment record between Plaintiff and Ms. Justice demonstrate the nature of delays caused either by Ms. Justice's direct instruction to engage in delay or her failure to approve payment or sign checks.

97. Months before terminating Plaintiff, Brandy Justice was engaging in substantial delay in addressing claims on Defendants' construction bonds.

12

98. Plaintiff was not the only employee of Defendants engaged in the payroll process, as other managers employed in the field at various project sites were responsible for providing Plaintiff correct information for payroll.

99. The collection of e-mails submitted into the summary judgment record as Plaintiffs App. Doc. 10 demonstrate numerous instances in which other managers failed to follow the proper payroll process.

100. Brandy Justice received or was otherwise copied on each and every e-mail contained in Plaintiffs App. Doc 10.

Defendants admitted each of the additional facts for purposes of summary judgment; in their reply to Plaintiff's other evidence, they filed an excerpt from the deposition of Jack Sherrod, an accountant employed by the defendants, relative to the calculation of back pay.

After hearing argument on Defendants' motion, the trial court ruled from the bench as follows:

It is not disputed in this case -- it is not disputed in this case that, as set out and argued by counsel for the defendant, there were 23 emails submitted to the plaintiff in this cause of action, which were admitted by the plaintiff as having received the same. Those emails brought up the issues that the employer had -- the defendant in this cause had with the plaintiff's performance. It's acknowledged that the defendant [sic] had those. It's acknowledged that those emails pre-date his pacemaker, his heart attack, and even his discharge.

It is undisputed that on the day of the heart attack, the defendants in this cause of action, as a result of a search on Google -- whether it was to find a contact or not -- as a result of a search on Google, they found that the plaintiff in this cause of action had spent I think two and-a-half years -- I don't remember exactly -- in the federal penitentiary as a result of money laundering and fraud in excess of two million dollars as it pertains to Clayton Homes.

Either one of those issues, the decline in performance in the last half of the year of his work with the defendant, or the fact that the defendant didn't advise – I'm sorry, the plaintiff didn't advise the defendant that, in fact, he had been convicted, I doubt -- well, I don't know -- fortunately, I'll never be in a position to where I money launder over two million dollar's worth of property or assets, but the fraud was never made known to them. They

13

learned that on the day of this heart attack. Either of those -- either of those issues are issues that are legitimate non-discriminatory reasons and would negate the allegations of the plaintiff in this cause of action as it pertains to the total issues collectively. But either of those -- either of those are reasons.

I can't imagine any employer keeping an employee, who is an at-will employee, when they find out that the very job that the employee is doing is what he spent two and-a-half years in jail for. That to me, the Court finds, is a legitimate non-discriminatory issue and not a pretext. Same way with the notification of 23 emails that were sent to the plaintiff prior to his pacemaker, prior to his heart attack, and prior to his termination.

Either of those, this Court would find, are not pretextual. They are legitimate reasons. They are non-discriminatory reasons, and as such, the motion for summary judgment should be granted. There is no dispute as to those issues. There is no dispute as to the law, and the Court would find that summary judgment should be granted accordingly.

The court memorialized this ruling in its final order.

Plaintiff argues that "there is more than sufficient evidence in the record to demonstrate the various reasons offered by defendants for termination are pretextual," citing seven circumstances that create "a material dispute of fact respecting the evidence on which the Trial Court relied when granting summary judgment,"[5] Plaintiff argues further that the court failed to appreciate the abundance of direct evidence of discrimination in the record.

In *Wilson,* this court considered the propriety of a grant of summary judgment to an employer in a suit in which a former employee challenged his termination, asserting that the reasons given for his termination were a pretext for discrimination on the basis of age and gender. 104 S.W.3d 39. In its ruling, this court discussed the requirement of Rule 56.04 that the movant show "that there is no genuine issue as to any material fact" when applied to an action brought under the THRA. *Id.* At 48. With specific reference to the issue of pretext, the court stated:

---

[5] The circumstances cited by Plaintiff are: (1) the alleged discovery on July 27, 2015 of his conviction; (2) that the decision to terminate him was made the same day he was hospitalized; (3) that there were no instances of formal discipline or counseling prior to July 27, 2015; (4) that there is evidence that his performance was satisfactory before his heart attack; (5) that the "performance issues" that Defendants' relied upon were not properly attributable to him but, rather to Ms. Justice's instructions; (6) that other employees committed errors in the payroll process and were not criticized or disciplined; and (7) that the defendants did not disclose the reason for his termination when they had an obligation to do so.

An employee may demonstrate that an employer's proffered, non-discriminatory reasons for an adverse employment action are pretextual by revealing the "weaknesses, implausibilies, inconsistencies, incoherencies, or contradictions" in the employer's explanation. *Garrett v. Hewlett-Packard Co.,* 305 F.3d 1210, 1217 (10th Cir. 2002). Three of the most common ways to undermine an employer's proffered reasons include: (1) establishing that the proffered reasons have no basis in fact, (2) establishing that the proffered reasons did not actually motivate the adverse employment action, or (3) establishing that the proffered reasons were insufficient to motivate the adverse employment action. *Dews v. A.B. Dick Co.,* 231 F.3d 1016, 1021 (6th Cir. 2000); *Cliff v. Board of Sch. Comm'rs,* 42 F.3d 403, 412 (7th Cir. 1994); *McNabola v. Chicago Transit Auth.,* 10 F.3d 501, 513 (7th Cir. 1993); *Barnes v. Goodyear Tire & Rubber Co.,* 48 S.W.3d at 708. Proof that an employer's explanation is unworthy of credence is a persuasive way to prove unlawful discrimination. As Justice O'Connor has pointed out:

> In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose.... [O]nce the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision.... Thus, a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.

*Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. at 147–48, 120 S.Ct. at 2108–09.

*Id. at* 50-51. This court has noted that "the plaintiff need not totally refute the defendant's assertions as to its reasons for its actions, but need only present some evidence, whether direct or circumstantial, that is sufficient to create a genuine issue of material fact as to the motivations of the Defendant." *Bundy v. First Tenn. Bank Nat'l. Assn.,* 266 S.W.3d 410, 417 (Tenn. Ct. App. 2007) (citing *Dennis v. White Way Cleaners, L.P.,* 119 S.W.3d 688, 693 (Tenn. Ct. App. 2003)).

With respect to Plaintiff's job performance, Defendants proffered 23 emails that were sent over an approximately two year period that they contend showed that Plaintiff's performance was declining; the court concluded these emails "brought up issues that the employer had -- the defendant in this cause had with the plaintiff's

performance." Casting doubt on the credibility of Defendants' explanation, Plaintiff's Undisputed Fact 84 stated that as late as "March or April 2015, Defendants' President, Richard Justice, remarked to Defendants' accountant, Jack Sherrod, that he hoped Plaintiff remained an employee for as long as Richard Justice was associated with the business"; in his deposition, Mr. Justice confirmed that Defendants had "no problems with him at the time."[6] Additionally, relative to the substance of the emails, Undisputed Fact 92 states that "[m]ost instances of delayed payments referenced in the multitude of e-mails between Ms. Justice and Plaintiff . . . were in fact attributable to Brandy Justice's specific instruction to delay payment when cash flow was slow."[7] In addition, Plaintiff's Undisputed Fact 99 stated that other emails in the record showed that other managers failed to follow payroll procedures; when asked about some of these circumstances in her deposition, Ms. Justice either did not recall or disclaimed taking any adverse action against the employee.[8] We also note that many of the statements relative to Plaintiff's asserted declining performance contained in Defendant's Statement of Undisputed Facts were disputed by Plaintiff. The evidence put forth by Plaintiff addresses his burden to "establish[] that the proffered reason[] ha[s] no basis in fact" and creates an issue of fact as to whether Plaintiff's performance was the real reason for his termination. *Wilson*, 104 S.W.3d at 51.

With respect to the Defendant's proffered reason that Plaintiff was terminated because of his conviction for money laundering and fraud, it appears that the date at which the Defendants learned of the conviction is one of several disputed material facts. Defendants contend that they made the decision to terminate the Plaintiff as soon as they learned of the conviction. Plaintiff counters that the timing of the decision to terminate him, contemporaneously with his heart attack, is evidence of pretext; at the trial court level and on appeal, he implies that Defendants knew of his conviction in 2008. In this regard, Ms. Justice testified in her deposition that the Defendants performed a background check when he was hired and the conviction was not reported; Plaintiff contends that this explanation is not worthy of credence, in part since Defendants cannot produce the background check report.

In our discussion of this issue, we focus on the Defendant's Statement of Material Fact 21, and Plaintiff's response:

---

[6] The time referenced by Mr. Justice was March or April 2015.

[7] Other undisputed facts state that Plaintiff did not have check writing authority and needed Ms. Justice's approval to make payments and her signature on checks.

[8] As our Supreme Court held in *Williams v. City of Burns,* "to show that the proffered reason is insufficient to motivate the discharge, the employee must produce evidence that other employees who engaged in substantially the same non-protected conduct were not fired." 465 S.W.3d 96, 119 (Tenn. 2015).

21. On July 27, 2015, while trying to reach the Plaintiff's wife to inform her of the Plaintiff's medical emergency, Anthony & Gordon President Richard Justice "googled" the Plaintiff's name and discovered the Plaintiff had prior criminal convictions related to his former employment with Clayton Homes. (Depo. Of B. Justice, p. 165, ll 7-21).[9]

RESPONSE: This fact is disputed. (Decl. Schede, pp. 10-11; Dep. Brandy Justice, pp. 68-72, 167, 177).[10]

In addition to the evidence cited by the parties, pertinent to this issue, Mr. Justice testified in his deposition that he searched the name "Warren Schede" rather than Chad Hatmaker.[11] We have also determined that Plaintiff's Statement of Undisputed Facts 76-82, quoted above, are pertinent to this issue.

---

[9] Ms. Justice testified as follows:

> Q: Okay. How is it you reached Carol the day after he was transported from the work site in July?
> A I was given her cell phone number, but when we finally -- all of our contact information was boxed up, so that's when I - Jerry called me. I could not find Carol's phone number or -- and Warren had his cell phone, so that didn't do me any good. So I called my dad, because I was in the middle of Home Depot when I got the phone call, and that's when I said, "I think she works at" -- and I was going through the law firm that I thought she worked at said, "can you Google it?" well, I couldn't come up with the right law firm. So he googled it, and that's -- at that moment is when he found out about the criminal convictions with Clayton.

[10] On page 68-72 of her deposition, Ms. Justice discusses the circumstances surrounding the 2008 background check. On page 167, pertinent to this issue, she testified that the search term for the Google search was Chad Hatmaker, who is the Plaintiff's son-in-law. On page 177, Ms. Justice testified that she and Mr. Justice made the decision to terminate Plaintiff on the day they learned of the conviction. In his declaration, Plaintiff states that, while he was employed with Defendants, he had provided Brandy Justice with Mr. Hatmaker's contact information when Ms. Justice's mother needed a lawyer and that he had processed payment for legal fees to Mr. Hatmaker's law firm.

[11] Mr. Justice testified as follows:

> Q. You mentioned on the date that Mr. Schede was transported from the job, from the office to the hospital by ambulance, that day you looked online, I guess, was it a Google search?
> A. I just Googled his name to find out where I could get a hold of his wife, because Brandy was out of the office, Jerry, who was in the office didn't know how to reach her. All I could remember was his son-in-law was an attorney, so I figured I could track it down somehow.
> Q. What did you Google, what was your search?
> A. Warren Schede.
> Q. Hoping to find what?
> A. His contact for his wife.

17

This evidence is material to the determination of whether Defendants' explanation of how they came to learn of Plaintiff's conviction is credible; if Defendants knew about the conviction in 2008 when they hired Plaintiff, it is illogical that he would have been terminated because of the conviction seven years later. The versions of Ms. Justice and Mr. Justice as to how they learned of the conviction conflict; this conflict in the evidence, coupled with the evidence that Defendants performed a background check on Plaintiff in 2008 but do not have the report, construed in the light most favorable to Plaintiff, lead us to conclude that "a reasonable trier of fact could disbelieve the company's proffered reason for terminating [Plaintiff's] employment and could believe that he was pushed out. . . ." *Wilson*, 104 S.W.3d at 56.

As noted in *Wilson*, "[p]roof that an employer's explanation is unworthy of credence is a persuasive way to prove unlawful discrimination . . . '[i]n appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose.'" *Id.* at 51 (quoting *Reeves*, 530 U.S. at 147-48). Plaintiff satisfied his burden to establish a genuine issue of material fact as to both reasons given for his termination. Accordingly, summary judgment should not have been granted.

Plaintiff also argues that the trial court "ignored direct evidence" of discrimination that, standing alone, "would allow a jury to find that Plaintiff was terminated on account of his disability."[12] As direct evidence of discrimination, Plaintiff argues that two of Brandy Justice's statements are directly indicative of discriminatory animus: a statement to Plaintiff in August of 2015 that he hadn't "been up to par since [he] had [his] battery replacement [in June 2015]"; and a statement that Ms. Justice made to Plaintiff's replacement, Melody Compton, on September 9 or 10, 2015, that Plaintiff "was getting older, and he was looking to retire soon, so he was having some difficulties due to his age." Plaintiff also cites the Defendants' implementation of a policy that requires employees make medical appointments outside of work hours or have appointment times pre-approved if within work hours.

In light of our reversal of the grant of summary judgment to Defendants and the remand of the case for further proceedings, it is not necessary to address Plaintiff's arguments in this regard. *See Goree v. United Parcel Serv., Inc.*, 490 S.W.3d 413, 426 (Tenn. Ct. App. 2015) (quoting *Paschall v. Henry Cnty. Bd. of Educ.*, No. W1999-00070-COA-R3-CV, 2000 WL 33774557, at *4 (Tenn. Ct. App. June 2, 2000) (noting that "The

---

[12] Direct evidence focuses "on the motivation of the employer" and therefore requires "evidence of an employer's conduct or statements which, if believed, requires a conclusion that unlawful discrimination was a substantial motivating factor for the employer's actions." *Wilson*, 104 S.W.3d at 49 (footnote omitted). "Direct evidence is sufficient to defeat a motion for summary judgment in employment discrimination cases." *Burress v. City of Franklin, Tenn.*, 809 F. Supp. 2d 795, 811 (M.D. Tenn. 2011) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002)) (footnote omitted).

direct evidence and circumstantial evidence methods are mutually exclusive; 'a plaintiff need only prove one or the other, not both.'")).

**IV.    CONCLUSION**

For the foregoing reasons, the judgment of the trial court granting summary judgment to Defendants is reversed; the case is remanded for further proceedings in accordance with this opinion.

_____
RICHARD H. DINKINS, JUDGE